UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID JOYCE,                    :      CASE NO.    3:03CV655(PCD)(JGM)
    *Petitioner*              :
                               :
V.                             :
                               :
THERESA LANTZ, ET AL.,         :      SEPTEMBER 9, 2004
    *Respondent*              :

<u>RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO
PETITION FOR WRIT OF HABEAS CORPUS</u>

This memorandum is submitted in opposition to the petition for writ of habeas corpus filed in the above captioned proceeding. In that petition, the petitioner claims that his state conviction is unlawful because it was obtained in violation of: (1) his right to confrontation and to present a defense and (2) his right to the effective assistance of counsel. Petition [Doc. # 22] at paragraphs 28, 29 and 41. For the reasons set forth below, the petitioner is not entitled to federal habeas corpus relief and his petition must be dismissed.

**I.      PROCEDURAL HISTORY**

This procedural history is compiled from documents previously forwarded as appendices to the respondent's Motion to Dismiss dated October 1, 2003 [Doc. # 16], as follows:

Appendix A      Connecticut Appellate Court's decision, <u>State v. Joyce</u>, 45 Conn. App. 390, 696 A.2d 993 (1997)

Appendix B      Record in petitioner's direct appeal to the Connecticut Appellate Court

Appendix C      Petitioner's brief on direct appeal to the Connecticut Appellate Court

Appendix D      State's brief on direct appeal to the Connecticut Appellate Court

Appendix E      Petitioner's reply brief on direct appeal to the Connecticut Appellate Court

Appendix F      Petitioner's petition for certification to the Connecticut Supreme Court

Appendix G    Connecticut Supreme Court's decision determining that certification was improvidently granted; State v. Joyce, 248 Conn. 699, 728 A.2d 1096 (1999)

Appendix H    Decision of the Connecticut Appellate Court in the state habeas corpus matter of Joyce v. Commissioner of Correction, 68 Conn. App. 903, 792 A.2d 912 (2002)

Appendix I    Record on habeas appeal to the Connecticut Appellate Court

Appendix J    Petitioner's brief on habeas appeal to the Connecticut Appellate Court

Appendix K    Respondent's brief on habeas appeal to the Connecticut Appellate Court

Appendix L    Petitioner's reply brief on habeas appeal to the Connecticut Appellate Court

Appendix M    Petition for certification to the Connecticut Supreme Court

Appendix N    Decision of the Supreme Court of Connecticut; Joyce v. Commissioner of Correction, 260 Conn. 918, 797 A.2d 514 (2002)

On March 3, 1993, in the Connecticut Superior Court for the judicial district of Fairfield, Freedman, J., presiding, the petitioner was convicted by a jury of felony murder in violation of Connecticut General Statutes § 53a-54a(a), attempted robbery in violation of §§ 53a-49 and 53a-134(a)(3) (4), robbery in violation of § 53a-134(a)(4), and criminal possession of firearm in violation of § 53a-217.  Joyce, 45 Conn. App. At 390; Appendix B at 22-22a.  The petitioner was sentenced a term of incarceration of ninety years.

On direct appeal to the Connecticut Appellate Court, the petitioner claimed that: "the trial court improperly (1) admitted evidence of prior arrests and other misconduct at the suppression hearing, (2) restricted the cross-examination of one police officer and the direct examination of another officer, (3) replied to jury questions, (4) allowed the state to inform the jury of the precise underlying crime in the criminal possession of a firearm charge, (5) denied his request to dismiss his trial counsel, and (6) denied his motion for a new trial."  Joyce, 45 Conn. App. at 392.

2

On June 10, 1997, the Connecticut Appellate Court rejected five of the petitioner's six claims.  It agreed with the petitioner, however, that the trial court's restriction of the cross-examination of one police officer and the direct examination of another was improper.  The court concluded, nevertheless, that the error was harmless and affirmed the judgment of conviction.  The petitioner then petitioned the Connecticut Supreme Court for certification to appeal the decision of the Connecticut Appellate Court raising the same claims that he presented to the Connecticut Appellate Court.  Certification initially was granted on the issue of whether the petitioner's Sixth Amendment right to confrontation had been violated by the trial court.  Subsequently, the Supreme Court determined that certification had been granted improvidently and dismissed the appeal on May 18, 1999. State v. Joyce, 248 Conn. 669, 728 A.2d 1096 (1999).

Meanwhile, in September 1995, the petitioner initiated habeas corpus proceedings in state court.  Appendix I at 1, 70.  Eventually, his claims were described in an amended petition dated March 8, 2000.  Id. at 5-18.  In that petition, he claimed that he was denied the effective assistance of counsel at his 1993 criminal trial and on direct appeal.  After a hearing on the merits of the petition, the state habeas court denied the petitioner's claims and dismissed the petition on February 15, 2001.  Id. at 46-65.  The petitioner appealed the state habeas court's denial of his petition.  On February 12, 2002, the Connecticut Appellate Court affirmed the judgment of the state habeas court.  Joyce v. Commissioner of Correction, 68 Conn. App. 903, 792 A.2d 912 (2002).  Again, the petitioner petitioned for certification to appeal the decision of the Appellate Court.  The petition was denied by the Connecticut Supreme Court on April 19, 2002.  Joyce v. Commissioner of Correction, 260 Conn. 918, 797 A.2d 514 (2002).

On April 10, 2003, the petitioner filed a petition for writ of habeas corpus with this court and the instant proceedings were initiated.

## II.    STATEMENT OF FACTS[1]

On direct appeal, the Connecticut Appellate Court made the following factual findings:

> On August 1, 1991, the defendant entered a small grocery store in Bridgeport. As he approached the counter, he grabbed a female customer, held a knife to her throat and threatened to kill her if the clerk, John Hanna, did not give him money. Nicolas Hanna, the store's owner, was sitting on a crate behind John near the cash register as the defendant jumped over the counter to take money from the register. Nicholas grabbed a gun he kept nearby and shot the defendant once in the head. During a struggle for the gun, the defendant shot Nicholas in the forehead, killing him. The defendant fled the store. Outside the store, the defendant pulled a woman, Joyce Castro, from her car and stole her purse car.
>
> The defendant was later apprehended in Hartford after the police were told about a shooting victim in an apartment on Cabot Street. The Hartford police located the stolen vehicle three blocks from the Cabot Street address and notified the Bridgeport police. Sergeant Glen Prentice of the Bridgeport police went to Hartford to investigate. On August 2, 1991, Prentice spoke to the defendant at a hospital in Hartford and arrested him on an outstanding warrant in an unrelated case. The defendant was returned to Bridgeport on the evening of August 2, 1991, and he asked to speak to Prentice. The defendant signed a written waiver of his Miranda rights and gave Prentice a written statement. Prentice again questioned the defendant on August 3, 1991, and the defendant gave him a second written statement. On August 4, 1991, Prentice sought to question the defendant again, but he refused to speak to him.

Joyce, 45 Conn. App. 392-93.

## III.    ARGUMENT

In his amended petition [Doc. # 22], the petitioner challenges his 1993 conviction for felony murder, attempted robbery, robbery, and criminal possession of firearm on the grounds that it was obtained in violation of his right of confrontation, to present a defense, and to the effective assistance of counsel. Paragraphs 18-42. For the reasons set forth below, the petitioner is not entitled to federal habeas corpus relief and his petition for writ of habeas corpus must be dismissed.

---

[1] The factual findings of state courts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

### A.    Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a writ of habeas corpus may issue only if one of two conditions is satisfied. The state-court adjudication must have resulted in a decision that either was (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed. 2d 389 (2004).[2] The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the High Court's "decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412, 120 S.Ct. at 1523.

A state court decision is "contrary to" clearly established Federal law if the state court "applies a rule that contradicts the governing law set forth in our cases, or confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 405-406, 1519-20. If a state-court decision is not "contrary to" U.S. Supreme Court precedent, the federal habeas court must determine whether the state court's decision involved an "unreasonable application" of clearly established Federal law. In so doing, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Thus, courts must apply an objective standard. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410, 1522. "Under §2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that

---

[2]    Justice O'Connor delivered the opinion of the Court with respect to Part II in which it determined that the Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role played by federal habeas courts in reviewing petitions filed by state prisoners and interpreted § 2254(d)(1). Justice Stevens delivered the opinion of the Court with respect to Parts I, III, and IV.

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411, 1522. Thus, some increment beyond error must be shown.

Once the petitioner's claims are examined under this standard, it becomes clear that federal habeas corpus relief is unwarranted and his petition should be dismissed.

### B.    The Petitioner's Confrontation Claim Is Without Merit Because The Trial Court's Error Was Harmless

As his first claim, the petitioner contends that his confinement is unlawful because his conviction was obtained in violation of his right to confrontation under the Sixth and Fourteenth Amendments to the U.S. Constitution, and Article First, Section 8 of the Connecticut Constitution.[3]  Petition at paragraph 28.  On direct appeal in the state courts, the petitioner asserted that the trial court improperly restricted the cross-examination of one police officer and the direct examination of another officer.  Joyce, 45 Conn. App. at 392. The Connecticut appellate courts agreed with the petitioner but found the error to be harmless.  As a result and for the reasons discussed below, the petitioner is not entitled to relief upon his state claim.

---

[3]    The petitioner cannot obtain relief on his state constitutional claim because such a claim does not implicate the federal constitution or other provisions of federal law.  Federal courts may entertain applications for writs of habeas corpus in behalf of persons in custody pursuant to judgments of state courts *only* on the ground that they are in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a). A "state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  McCullough v. Singletary, 967 F.2d 530, 532 (11th Cir. 1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1423, 122 L.Ed.2d 792, reh'g denied, 507 U.S. 1046, 113 S.Ct. 1888, 123 L.Ed.2d 505 (1993); Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. 1981).  The United States Supreme Court has held "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).  Indeed, the determination of state evidentiary law is binding on federal courts.  Storti v. Massachusetts, 183 U.S. 138, 142, 22 S.Ct. 72, 46 L.Ed. 120 (1901).  In Estelle v. McGuire, the Court held that the propriety under state law of the admission of certain evidence accompanied by a jury instruction was not a question to be determined by federal courts.  Rather, a federal court should only decide whether the admission of the evidence and the jury instruction violated due process. It explained that "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle v. McGuire, 502 U.S. at 71-72, 112 S.Ct. at 481-82.

6

### 1.    The Appellate Court's ruling on the petitioner's claim

On direct appeal, the Connecticut Appellate Court concluded that the trial court erred in refusing to allow the petitioner to present evidence of bias or interest on the part of Sergeant Glen Prentice of the Bridgeport police. After so finding, however, the Appellate Court determined that the error was harmless.

The petitioner's claim is based on the fact that he was assaulted by Joseph Procaccini, a Bridgeport police officer, on February 15, 1990. This assault occurred 17½ months before the events that gave rise to his felony murder conviction occurred on August 1, 1991. "In that assault, Procaccini struck the defendant while the defendant was in handcuffs. As a result of his conduct, Procaccini was convicted in federal court and sent to prison." Joyce, 45 Conn. App. at 394. The petitioner alleges that as a consequence of the "Procaccini incident," the Bridgeport police are biased against him and that such bias affected the outcome of his 1993 criminal trial because he was not permitted to cross-examine Sergeant Prentice about his involvement.

The Connecticut Appellate Court analyzed and resolved the petitioner's claim as follows:

> The defendant . . . claims that the trial court improperly restricted his cross-examination of Prentice and direct examination of Officer David Daniels of the Bridgeport police concerning bias against the defendant that may have arisen as a result of the defendant's 1990 assault by Procaccini. The defendant claims that the trial court's restriction of his cross-examination violated his sixth amendment constitutional right of confrontation. The thrust of the defendant's claim is that the Bridgeport police officers were aware of and resented the defendant's complaint against Procaccini, and, therefore, Prentice's testimony was biased and motivated by this resentment.

> A

> In an offer of proof, outside the jury's presence, the defendant examined Prentice concerning his knowledge of the Procaccini assault and conviction. The defendant's counsel also questioned Prentice about whether he knew of the defendant's involvement in the incident. The trial court ruled that it would not permit the defendant to cross-examine Prentice about his knowledge of the Procaccini incident for purposes of impeachment based on bias or motive. The trial court concluded that the proposed cross-

7

examination was not relevant and was a collateral issue that would divert the trial from material issues.

The trial court has wide discretion to determine relevancy of evidence. State v. Fritz, 204 Conn. 156, 167, 527 A.2d 1157 (1987). It is true that the scope and extent of cross-examination generally rests within the sound discretion of the trial court. State v. Miller, 202 Conn. 463, 482, 522 A.2d 249 (1987). "This discretion arises, however, only after the defendant has been permitted cross-examination and impeachment of a witness sufficient to satisfy the sixth amendment." State v. Colton, 227 Conn. 231, 248, 630 A.2d 577 (1993). "[A]n important function of cross-examination is the exposure to a witness' motivation in testifying." Id. at 249, 630 A.2d 577, citing Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). "Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." State v. Colton, supra, at 249, 630 A.2d 577.

In the present case, the trial court completely denied the defendant's right to cross-examine Prentice on the issue of bias concerning the Procaccini incident and did not merely limit the extent of the cross-examination. The trial court's discretion, therefore, did not come into play. We conclude that the trial court improperly determined that the evidence of bias or interest was collateral. Evidence tending to show bias is never collateral or irrelevant. Prentice's possible bias against the defendant was clearly relevant and was a matter for the jury to consider when it evaluated Prentice's credibility.

B

During its case-in-chief, the defendant proposed to examine Daniels to impeach Prentice's testimony. In an offer of proof, Daniels testified that he and Prentice were members of the fifth platoon, which shared shifts and time off. Daniels testified that the fifth platoon was like a family and socialized together. Daniels testified that because he had reported Procaccini's misconduct against the defendant, he was shunned by the other members of the platoon, including Prentice. Daniels testified that the platoon's resentment flared when the defendant was charged in another murder case in July, 1991.

The defendant argues that Daniels' testimony was necessary to show that Prentice had strong feelings about the Procaccini incident and was likely to have known of the defendant's involvement before he investigated the present case and took the defendant's statements. The trial court disallowed the examination of Daniels on this issue, concluding that Prentice's bias against Daniels did not mean that Prentice was biased against the defendant.

Because bias or interest is not collateral, extrinsic evidence may also be introduced. State v. Colton, supra, 227 Conn. 231, 630 A.2d 577, citing State v. Shipman, 195 Conn. 160, 163, 486 A.2d 1130 (1985). The trial court improperly restricted the defendant's right to show Prentice's bias through the direct examination of Daniels.

8

Joyce, 45 Conn. App. at 397-99.

Having found that the trial court erred, the Connecticut Appellate Court proceeded to evaluate the importance of the excluded testimony. In so doing, the court found that the trial court's error was harmless.

> We . . . evaluate the importance of Prentice's testimony to the state's case. Prentice testified as to the defendant's statements, and to the steps involved in his investigation. Prentice's testimony was, however, cumulative and corroborative of the testimony of John Hanna, an eyewitness to the robbery and murder. In all, three eyewitnesses placed the defendant at the crime scene. Both Hanna's wife and brother testified that he was in the store, and John Hanna identified him as the killer. The defendant lied to the Hartford police upon his apprehension after stealing a car and driving to Hartford. Castro's pocketbook was found near where the defendant was apprehended in Hartford. A Hartford police officer also identified the defendant. Overall, the state had a strong case against the defendant. Accordingly, we conclude that the trial court's limitation of Prentice's impeachment for bias was harmless beyond a reasonable doubt and does not warrant a new trial.

Joyce, 45 Conn. App. at 399-400.

## 2.    The Appellate Court's application of law was not unreasonable

For the purposes of this proceeding, the respondent will not take issue with the Appellate Court's finding that the trial court erred. Therefore, the only issue presented is whether the Connecticut Appellate Court's finding of harmless error is unreasonable. In deciding whether the trial court's error was harmless, the Appellate Court explained that "[w]hether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . ." (Internal quotation marks omitted.)  Joyce, 45 Conn. App. at 399-400.

In analyzing the impact of the error, the Connecticut Appellate Court used the same factors that have been approved by the U.S. Supreme Court. The High Court has explained that "the constitutionally improper denial of a defendant's opportunity to impeach

a witness for bias, like other Confrontation Clause errors, is subject to <u>Chapman</u>[4] harmless-error analysis.  The correct inquiry is whether, assuming that the damaging potential of cross-examination were fully realized, a reviewing court might nonetheless day that the error was harmless beyond a reasonable doubt." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).  Once a confrontation violation has occurred, a finding of harmlessness "in a particular case depends upon a host of factors, all readily accessible to reviewing courts.  These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."   (Internal citations omitted.) <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). As a result, the Appellate Court analyzed the harmlessness of the trial court's error in accordance with "clearly established Federal law, as determined by the Supreme Court of the United States."

Here, the Appellate Court's decision was not unreasonable because Officer Prentice's testimony was cumulative of that of the eyewitnesses.  <u>Joyce</u>, 45 Conn. App. at 400.  As a result, the trial court's error was harmless and the petitioner's claim is without merit. Therefore, the petitioner's claim must fail and the prayed for relief must be denied.

### C.    The Petitioner's Ineffectiveness of Counsel Claim Is Frivolous

In his second claim, petitioner asserts that his trial lawyer, Paul M. Tymniak, was ineffective because he failed:

> 38.    [T]o investigate, develop and/or offer evidence at trial regarding Detective Kennedy's involvement in the attempted cover-up of the 2/15/90 beating incident, and failed to investigate, develop and/or offer evidence at trial regarding Detective Kennedy's direct and immediate involvement in the investigation of 8/1/91

---

[4]    <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Wood Avenue incident, including (but not necessarily limited to) his interviews with the witnesses and victims who later testified at trial and implicated the petitioner

     39.    [Counsel's] acts and omissions, as described herein, fell below the standard of reasonable competence of attorneys of ordinary skill and training in the criminal law.

     40.    But for [counsel's] acts and omissions as described herein, it is reasonably probable that the result of the prosecution and/or subsequent appeals therefrom would have been different.

Petition at paragraphs 38-40.

For the reasons set forth below, the petitioner's claim is without merit.  Therefore, he is not entitled to habeas corpus relief.

### 1.    Law applicable to the petitioner's ineffective assistance of counsel claim

A claim that a petitioner was denied the effective assistance of counsel must be analyzed under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To prevail under Strickland, a petitioner must demonstrate *both* deficient performance and actual prejudice.  To meet the first prong of this two-prong test, a petitioner must prove that his counsel made "errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.  Counsel's performance must be shown to have fallen below an objective standard of reasonableness, in view of all the circumstances. Id. at 688.   Furthermore, because of the difficulties inherent in evaluating attorney performance in hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action *might* be considered sound trial strategy." Id. at 689.

If counsel's performance is shown to be flawed, the petitioner must still meet the terms of the second prong.  To demonstrate prejudice, a petitioner bears the burden of showing, within a reasonable probability, that in the absence of such deficiency the results of the trial

11

would have been different.  <u>Strickland</u>, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id</u>.

> **2.    The petitioner cannot prevail on his claim that his attorney's investigation of Detective Kennedy was inadequate**

The petitioner alleges that his trial attorney did not adequately investigate his case. Specifically, he claims that trial counsel failed to investigate, develop and present evidence *to the jury* that one of the investigating officers, Detective Kennedy, had previously been involved in an attempt to coverup an unrelated incident in which the petitioner was punched, while handcuffed, by a member of the Bridgeport police department.  The previous incident was investigated by the Internal Affairs Bureau and resulted in departmental charges being brought against Detective Kennedy and other officers in the Department.  "Petitioner claims that evidence of Detective Kennedy's involvement in the incident and the findings of the Internal Affairs investigation, including the charges against Detective Kennedy, should have been offered by trial counsel to indicate the bias of the Bridgeport Police Department, and as evidence tending to undermine the credibility of petitioner's confession to Detective Kennedy's immediate superior during the investigation of the case, Detective Sgt. Glen Prentice."  Appendix I at 54.

The state habeas court made the following factual findings relevant to the petitioner's claim:

> [Assistant State's Attorney John Smriga] testified that he first learned of the Procaccini incident from Attorney Tymniak during pretrial discussions and that Attorney Tymniak was prepared to use this incident during trial.[5]  Attorney Smriga obtained the Internal Affairs record, and he and Attorney Tymniak reviewed the report.  As part of his motion to suppress the statements, petitioner claimed that the Bridgeport police were motivated to lie, because they were angry at him for getting Procaccini in trouble and were looking for revenge.  Both Officers Kennedy and Prentice testified at the suppression hearing.

> Attorney Drager, petitioner's appellate counsel, testified that petitioner's theory, supported by his testimony at the hearing, was not that he falsely confessed but that

---

[5]    Attorney Tymniak died before the state habeas trial commenced and, therefore, could not speak for himself.

Prentice had put things into the confession he did not say. . . .  Attorney Drager further stated that petitioner testified that he gave statements to Prentice which Prentice put down, but in addition, Prentice added his own facts to those statements.  Petitioner did not testify that Prentice intimidated him into giving a false statement. . . .  Attorney Drager testified that Attorney Tymniak was trying to tell the jury that they could not credit Prentice's testimony or the statement's he took; however, the trial court ruled this evidence inadmissible. . . .  Attorney Drager further testified that Attorney Tymniak could not, at trial, claim that petitioner was coerced into making the confession because petitioner had not so testified at the suppression hearing.  He testified that Prentice added facts to the confession and not that he, petitioner, had falsely confessed. . . .  Attorney Smriga testified that Attorney Tymniak's theory on the motion was to show that the police were motivated to lie because of the Procaccini incident, and therefore, they would alter their testimony.  He also testified he would have tried the case without the statements, because he had other strong evidence of petitioner's guilt. . . .

Detective John Kennedy testified he had arrested petitioner on February 15, 1990, at the railroad station, and when Procaccini arrived at the scene, petitioner and Procaccini exchanged words, and Procaccini hit petitioner.  It is clear that Kennedy was involved with the crime which is the subject of this habeas.  He interviewed the deceased brother and showed him a photo array, but the brother did not make an identification.  He also interviewed the victim's wife, and she picked out petitioner's photo, but was uncertain of her identification. . . .  Kennedy testified he accompanied Prentice to Hartford, and when he went into the hospital room, he saw petitioner in the bed and he left the room.[6]  He went to a superior in the detective bureau and asked not to be involved in the investigation, and his request was granted. . . .  Detective Kennedy also testified at the suppression hearing.

Petitioner claims that Det. Kennedy's involvement with the Procaccini incident should have been before the jury.  This, however, ignores both the Appellate Court and Supreme Court decisions, which clearly indicate that both appellate tribunals agreed with Attorney Tymniak's proffer of the same evidence through Prentice and Officer David Daniels but found that trial court's restrictions on this evidence was harmless beyond a reasonable doubt.  State v. Joyce, 45 Conn. App. at 397-400.  The purpose of the evidence at trial was to discredit Prentice, who had a much larger role in the investigation than did Kennedy.  Once Attorney Tymniak was denied by the trial court as to the cross-examination of Prentice, and the offer of proof for Daniel's direct testimony, it cannot be said that the trial court or the Appellate Court would have viewed Kennedy's testimony any differently.

(Citations omitted.)  Appendix I at 54-57.

In evaluating the effectiveness of the petitioner's counsel, the state habeas court

determined that:

---

[6]    When arrested by the Hartford police, the petitioner had falsely identified himself as "Kevin Blakely."  Appendix C at 10 n. 9; Appendix D at 5; Transcript (2/24/93) at 46-47.

Attorney Tymniak raised the appropriate issues throughout the suppression hearing and trial.  The trial court made rulings on those issues, and those rulings were reviewed by the Appellate Court. . . .

It is not the function of this court to "Second-guess" the decisions of petitioner's attorneys.  Those decisions have been made, ruled upon by a judge and reviewed by the Appellate Court.  Each decision of counsel was made in the heat of trial and with a variety of consequences.  To view these decisions with the benefit of hindsight would not be appropriate nor is it the proper standard.  Facing the significant weight of evidence against his client, Attorney Tymniak did an effective job of protecting the interests of his client.  He evidently provided sufficient representation for the jury to acquit the petitioner on the charges of attempted murder and assault in the third degree.  There has been no evidence presented that would allow this court to find that he failed to adequately represent the interests of his client, as defined by state and federal law.

This court does, therefore, find that petitioner has received the effective assistance of counsel both at the trial and appellate levels.  The petition is, therefore, dismissed, and the habeas denied.

Appendix I at 63-65.

### 3.    The state court's decision that trial counsel's assistance was effective was not unreasonable

The petitioner claims that his attorney's investigation into Detective Kennedy's bias was inadequate and should have been before the jury.  This, of course, ignores the fact that Detective Kennedy did not testify before the jury.  Rather, he only testified at the motion to suppress the petitioner's confession.

In evaluating the petitioner's claim, the habeas court identified Strickland v. Washington as the standard under which such a claim should be analyzed.  Because Strickland sets forth the analysis that governs the review of such claims, the state habeas court properly recognized the framework within which it would review the plaintiff's ineffectiveness claim. Its analysis of the petitioner's claims under Strickland was, therefore, not contrary to clearly established Federal law.  Thus, the only issue remaining is whether the state court's application of Strickland was unreasonable.

The state court found that trial counsel's representation was adequate.  The petitioner challenges his attorney's failure to present the same evidence of bias regarding Detective Kennedy that the criminal trial court disallowed regarding Sergeant Glenn Prentice.

14

Prentice, of course, had a much larger role in the murder investigation than did Kennedy. Most importantly, Kennedy did not testify before the jury at the petitioner's 1993 criminal trial. Appendix K at 12, 13.[7] Thus, evidence of his alleged bias would not be relevant to the proceedings before the jury.

Even if counsel's performance were deficient, however, the petitioner has not established prejudice. In his brief to the Connecticut Appellate Court, he *speculated* that Detective Kennedy *may* have "adversely influenced the actions and testimony of Sgt. Prentice, and the witness John Hanna. . . ." Appendix J at 19. Such speculation, however, cannot substitute for evidence of actual prejudice. Here, there simply is no reasonable probability that the result of the proceeding would have been different. The factual findings of the state habeas court make it clear that Officer Kennedy played a small role in the police investigation and prosecution of the petitioner for the August 1, 1991 murder of store owner Nicolas Hanna. Officer Kennedy interviewed the victim's "brother and showed him a photo array, but the brother did not make an identification. He also interviewed the victim's wife, and she picked out petitioner's photo, but was uncertain of her identification." Appendix I at 56. Kennedy testified at the state habeas trial that "he accompanied Prentice to Hartford, and when he went into the hospital room, he saw petitioner in the bed and he left the room. He went to a superior in the detective bureau and asked not to be involved in the investigation, and his request was granted." Appendix I at 56. Given the overwhelming strength of the state's case against the petitioner, there simply is no reasonable probability that, but for the alleged errors of counsel, the result of the proceeding would have been different. As the Connecticut Appellate Court explained:

> In all, three eyewitnesses placed the defendant at the crime scene [in Bridgeport]. Both Hanna's wife and brother testified that he was in the store, and John Hanna identified him as the killer. The defendant lied to the Hartford police upon his apprehension after stealing a car and driving to Hartford. Castro's pocketbook was

---

[7]    In both his opening and reply briefs, the petitioner does not dispute the state's assertion that Kennedy did not testify before the jury. Appendix J at 23; Appendix L at 1.

found near where the defendant was apprehended in Hartford.  A Hartford police officer also identified the defendant.  Overall, the state had a strong case against the defendant.

Joyce, 45 Conn. App. at 400.

Thus, the petitioner failed to prove that his attorney's performance was deficient *and* that he suffered prejudice.  For these reasons, the decisions of the Connecticut courts are neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the Untied States.  Therefore, the petitioner's claim must fail and the prayed for relief must be denied.

**IV.     CONCLUSION**

As demonstrated above, the petitioner is not in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Therefore, his claim for relief should be denied and his petition for writ of habeas corpus dismissed.

16

Respectfully submitted,

RESPONDENT--THERESA LANTZ, ET AL.

By: _____
JO ANNE SULIK
Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (fax)
Fed. Bar. No. ct 15122

_____
MICHELLE NEARY
Law Student Intern
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (fax)

## CERTIFICATION

I hereby certify that a copy of this memorandum was mailed to Attorney Richard L. Grant, 36 Tamarack Avenue, PMB # 213, Danbury, Connecticut 06811, (203) 778-8075, on September 9, 2004.

_____
JO ANNE SULIK
Assistant State's Attorney