## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAVID L. JOYCE #92272                  :    CASE NO: 3:03-CV-655 (PCD)

      Petitioner,                       :

  -against-                              :

THERESA C. LANTZ, COMMISSIONER         :
OF CONNECTICUT DEPARTMENT OF
CORRECTION, AND HECTOR RODRIGUEZ,      :
WARDEN CHESHIRE CORRECTIONAL
INSTITUTION                            :

      Respondents.                      :    NOVEMBER 15, 2004

## REPLY TO RESPONDENT'S ANSWER AND MEMORANDUM IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

Pursuant to Rule 5(e) of the Rules for Proceedings Under 28 U.S.C. § 2254, as amended, the Petitioner hereby submits the following brief in reply to the state's Memorandum in Opposition to the Petition for Writ of Habeas Corpus.

### I.    PROCEDURAL HISTORY

Petitioner agrees with and adopts the procedural history as outlined in the state's memorandum dated September 9, 2004, except as otherwise noted herein.

### II.    COUNTER-STATEMENT OF FACTS

On March 3, 1993, the petitioner was found guilty in Connecticut Superior Court after a jury trial of felony murder, attempted robbery and criminal possession of a pistol or revolver in connection with an incident, which occurred on August 1, 1991 at a convenience store on Wood Avenue in Bridgeport. On June 3, 1993, he was sentenced to a total effective sentence of ninety (90) years.

A.    Petitioner's criminal trial and direct appeal

    1.    *Petitioner's criminal trial*

At the criminal trial, the state's lead witness was Det. Sgt. Glen Prentice, who obtained two statements from the petitioner after arresting him in Hartford and returning him to Bridgeport for interrogation.  Both statements taken from petitioner by Sgt. Prentice were offered in evidence by the state at petitioner's criminal trial.

Petitioner's criminal trial counsel, Attorney Paul Tymniak, attempted to question Sgt. Prentice in an offer of proof outside the presence of the jury regarding his knowledge of a February 15, 1990 incident in which the petitioner was punched, while handcuffed, by Bridgeport Police Officer Joseph Procaccini while petitioner was in custody at the Bridgeport Train Station.  (See Transcript of Criminal Trial, at 580).

Sgt. Prentice acknowledged that he had known Off. Procaccini "as a brother police officer," and that they had mutual friends on the police force.  Id.581, 601-602.  Sgt. Prentice also acknowledged that he was aware of the 2/15/90 incident which resulted in Off. Procaccini's conviction on federal civil rights charges and his departure from the police force.  Id.584.  He also admitted that he "eventually" became aware that Procaccini's criminal conviction for excessive force involved the petitioner.  Id.  He further testified that he became aware of this because he was advised of it be Off. John Kennedy.  Id. 589, 593-94.  Kennedy was present with Off. Procaccini during Procaccini's beating of the petitioner and was also involved in the investigation of the 8/1/91 Wood Avenue incident, as further described below.

After the defense offer of proof, the trial judge ruled that the proposed cross-examination of Prentice regarding the Procaccini incident was irrelevant and would not be permitted.  Id.603-06.

During the defense case, the defense supplemented it offer of proof by calling Off. David Daniels to the stand in an offer of proof outside the jury's presence.  Id.703-04.  Daniels testified that at the time of the Procaccini incident in February 1990, he, Procaccini and Prentice were all members of the Fifth Platoon, a group of officers who worked the same shifts together and had the same time off.  Id.705-06.  Daniels further testified that the Fifth Platoon was like "a family" where everybody knew everybody, and that members of the platoon went to the same bar together after work, played football together, and went to family picnics and platoon parties together.  Id.707.

Off. Daniels had earlier testified at the suppression hearing that he was present during the 2/15/90 incident in which the petitioner was beaten, while handcuffed, by Off.Procaccini.  Id.202-04.  Daniels testified that when he arrived at the train station in response to a call for back up, he saw the petitioner and another individual being held in handcuffs in a room near the ticket booth.  Id.205.  The other officer present was Off. Kennedy.  Id.  At this point, Off. Daniels observed the handcuffed defendant and the other handcuffed individual get beaten up by Off.Procaccini.  Id.206-07.  Off.Daniels saw Procaccini throw the other handcuffed individual over a table and then punch the petitioner in the face after petitioner and his companion protested their innocence regarding their arrest on suspicion of purse snatching.  Id.207, 216.[1]

---

[1] The defense also called Off.Kennedy to the stand during the suppression hearing, at which time Kennedy confirmed that he had arrested and handcuffed the defendant at the start of the 2/15/90 Bridgeport Train Station incident involving Off.Procaccini.  Id.230-

During defense counsel's offer of proof at trial, Daniels further testified that after he reported the Procaccini incident to his superiors, he was treated as being responsible and was ostracized and treated as a non-person by member of the Fifth Platoon.  Id.707, 709.  Other officers would refuse to talk to him, would close their office doors as he walked by, and failed to provide back-up for him on the street.  Id.  *Daniels also testified that he was treated this way by Sgt. Prentice*.  Id.709-10.

At the conclusion of the offer of proof, defense counsel claimed Off.Daniels testimony to impeach the state's lead witness, Sgt. Prentice, on multiple issues by showing that Prentice would have been aware of the petitioner's beating by Off.Procaccini, and that Prentice had strong feelings about the Procaccini incident as reflected in his ostracization of Off.Daniels.  Id.708, 711-18.  The criminal trial judge ruled that Off. Daniels testimony was irrelevant and collateral.  Id.728.

2.    *Petitioner's direct appeal of the criminal conviction*

On direct appeal the petitioner claimed, inter alia, that his Sixth Amendment right of confrontation had been improperly denied by the trial judge.  The Connecticut Appellate Court agreed, holding that

> "The trial court completely denied the defendant's right to cross-examine Prentice on the issue of bias concerning the Procaccini incident and did not merely limit the cross-examination.  The trial court's discretion, therefore, did not come into play.  We conclude that the trial court improperly determined that the evidence of bias or interest was collateral.  Evidence tending to show bias is never collateral or irrelevant.  Prentice's possible bias against the defendant was clearly relevant and was a matter for the jury to consider when it evaluated Prentice's credibility."

---

31.  Kennedy also testified that the petitioner had, in fact, been struck in the face by Off.Procaccini while handcuffed, id., in direct contradiction to a sworn statement he provided to Internal Affairs following the incident, and in spite of the omission of any reference to the beating in the police report he prepared and filed for the incident.  See part "B," infra.

State v. Joyce, 45 Conn. App. 390, 397-99 (1997).

Likewise, the Connecticut Appellate Court held that Off.Daniels' testimony was also improperly excluded from evidence where it tended "to show that Prentice had strong feelings about the Procaccini incident and was likely to have know of the defendant's involvement before he investigated the present case and took the defendant's statements. . .Because bias or interest is not collateral, extrinsic evidence may also be introduced [Internal citations omitted]. . .The trial court improperly restricted the defendant's right to show Prentice's bias through direct examination of Daniels." Id.

After finding that the trial court violated the petitioner's fundamental constitutional right to confrontation, the Connecticut Appellate Court nonetheless found the error to be harmless:

> "We. . .evaluate the importance of Prentice's testimony to the state's case. Prentice testified as to the defendant's statements, and to the steps involved in his investigation. Prentice's testimony was, however, cumulative and corroborative of the testimony of John Hanna, an eyewitness to the robbery. . . Both Hanna's wife and brother testified that he was in the store, and John Hanna identified him as the killer. . ."

State v. Joyce, supra, 45 Conn. App. At 399-400.

The Connecticut Supreme Court granted petitioner's

B.    Petitioner's habeas trial

During the pendency of his direct appeal, petitioner also filed a state petition for a writ of habeas corpus alleging, inter alia, that his trial counsel had been ineffective for failing to investigate, develop and offer certain evidence regarding Kennedy's involvement in the attempted cover-up of the 2/15/90 beating incident. This evidence consisted primarily of findings and charges brought by the Internal Affairs Division of

the Bridgeport Police Department against Kennedy.  Internal Affairs charged Kennedy with lying to his superiors about what had transpired in a sworn statement by him denying that the petitioner had been abused in any way by Procaccini.  See Exhibit "A" (Internal Affairs Report dated March 30, 1990); see also Exhibit "B" (Sworn Statement of Off. John Kennedy dated March 22, 1990); see also Exhibit "C" (Sworn Statement of Off. David Daniels dated March 15, 1990); see also Exhibit "D" (Police Incident Report of John Kennedy dated February 15, 1990).[2]

Petitioner also claimed that his trial counsel was ineffective for failing to investigate, develop and offer evidence at trial regarding Kennedy's direct and immediate involvement in the investigation of the 8/1/91 Wood Avenue incident, including his interviews at the scene with the victim's brother and wife, John Hanna and Alice Hanna. Specifically, petitioner claimed that his trial counsel should have offered evidence that Kennedy interviewed both John Hanna and Alice Hanna, and showed them both photos of the petitioner.  Both John Hanna and Alice Hanna subsequently identified the petitioner at the criminal trial.

The state habeas trial was conducted over the course of several days from March 2000 to September 2000.  The state court heard the testimony of several witnesses over the course of the trial including, inter alia, Asst. State's Attorney John Smriga, Det. John Kennedy, and Sgt. David Daniels.

Attorney Smriga was the prosecuting attorney for the underlying criminal matter, and was called by petitioner's counsel.  Smriga testified that he had obtained a copy of the Internal Affairs file regarding the 2/15/90 incident (see Exhibit "A") during the

---

[2] Exhibits A, B, C and D were all part of Petitioner's Exhibit 14 at the State Habeas Trial.

course of discovery and disclosed it to petitioner's counsel.  (See Transcript of Habeas Trial 7/10/00, at 8, 15-16, 37, 40-41.  Further , counsel for the Respondent at the state habeas trial stipulated that Off. Procaccini struck the petitioner while handcuffed on 2/15/90, and that Procaccini subsequently resigned from the department and was convicted and incarcerated on federal civil rights charges.  (See State Habeas Transcript 3/20/00, at 15; 5/15/00, at 8).

Det. Kennedy (who had been promoted from patrolman to detective since the 2/15/90 Procaccini incident) was also called by petitioner's counsel at the state habeas trial.  (See generally State Habeas Transcript 5/15/00, at 32-100).  Kennedy testified that on the date of the 8/1/91 Wood Avenue incident he was under the direct command of Det. Sgt. Glen Prentice, who was the immediate supervisor of the Detective Squad that was on duty at the time of the call.  (Habeas Transcript 5/15/00, at 34-35).  Det. Kennedy testified that he was also on duty that day, along with Det. Judith Tesla, and that it fell to Det. Sgt. Prentice, Det. Kennedy and Det. Tesla to respond to the call from the Wood Avenue store on 8/1/91.  Id.36.  Kennedy testified that, after responding to the scene with Prentice and Tesla, he assisted the other officers in locating and identifying evidence, and also spoke to witnesses, including John Hanna, the brother of the homicide victim; id.37; and Alice Hanna, the victim's wife.  Id.43.  Specifically, Kennedy presented both John Hanna and Alice Hanna with photos of the petitioner.  Id.  Mrs. Hanna tentatively identified petitioner as possibly being the perpetrator.  Id.43.

Kennedy also testified that he was ordered by Prentice to accompany Prentice and Tesla to Hartford in order to apprehend the petitioner, who was in St. Francis Hospital with a gun shot wound.  Id.46-48.  Kennedy testified that he only recognized the

petitioner to be the victim of the 2/15/90 beating by Off. Procaccini upon entering his
hospital room at St. Francis Hospital. Id.49.  As noted above, Kennedy was showing
photos of the petitioner to witnesses at the scene on 8/1/91, and Alice Hanna tentatively
identified the petitioner to Kennedy.  Id.43.

Kennedy also testified that he was present during the 2/15/90 incident in which
the petitioner had been beaten by Off.Procaccini, and that the petitioner had, in fact, been
punched while handcuffed by Off.Procaccini.   Kennedy also confirmed that he issued a
police report as a result of that incident which contained no reference to the beating of the
petitioner by Off. Procaccini (see Exhibit "D").  Id.50-51.

Kennedy also testified that he recalled being interviewed by Internal Affairs
investigators regarding the Procaccini incident. Id.79.  In his sworn recorded statement to
Internal Affairs dated March 22, 1990, Kennedy denied that any excessive force was used
by Procaccini.  See Exhibit "B."  (Kennedy's 3/22/90 sworn statement was admitted into
evidence at the state habeas trial as part of Petitioner's Exhibit 14).

Sgt. David Daniels was also called by petitioner at the state habeas trial.  (See
generally State Habeas Transcript 5/15/00, at 2-32).  Daniels testified that on 2/15/90, he
was assigned to patrol the vicinity of the Bridgeport Train Station and that he witnessed
the incident wherein Off.Procaccini struck the petitioner while he was handcuffed.  Id.5-
9.  He further testified that he initially did not report the incident for fear of being
ostracized by his fellow officers, but that he ultimately reported the incident to his
superior.  Id.9, 13.

Daniels testified that, immediately after reporting the incident, other officers in
his unit stopped speaking to him, and that he received death threats and found a hang

man's noose in his patrol car.  Id.11.  He further testified that he had to seek reassignment as a result of the incident and that his life "has been a living hell for the past twelve years."  Id.15, 17.  Further, he testified against other officers involved in the 2/15/90 incident in subsequent police hearings, including Kennedy, and also testified against Procaccini in federal criminal proceedings.  Id.14.

Most significantly, Daniels also testified that, in retaliation for reporting the incident, he was not provided with back-up in dangerous situations:

> Q:    Now I think you testified that you weren't covered on calls?
>
> A:    Right.
>
> Q:    What did you mean by that, please?
>
> A:    I mean that when a police officer is sent on a call, there's an implied assurance that other officers are gonna come if he needs protection or if he finds himself in a dangerous situation.  I didn't—I didn't merit such assurance…
>
> Q:    . . .this happened, would it be fair to say, more than once?
>
> A:    Oh, yeah, that would be very fair. . .I had one conversation with a Sergeant who's currently in Internal Affairs now, and he told me that he was present when somebody cut me off on the radio. . .

Id.12-13, 23-24.  Daniels also testified that he was also ostracized by Prentice subsequent to his reporting of the Procaccini incident.

At the state habeas trial, petitioner offered into evidence, without objection, a copy of the Internal Affairs Report dated March 30, 1990.  See Exhibit "A."  According to the Internal Affairs Report, on 2/15/90 then Off. John Kennedy took two black males, one of them the petitioner, into custody at the Bridgeport Train Station on suspicion of purse snatching.  According to Off. Kennedy's 2/15/90 report (see Exhibit "D"), both subjects denied involvement with the purse snatching and were taken to the train station

security office.  While en route, the petitioner protested his innocence several times, and

was placed under arrest for disorderly conduct and handcuffed.  The other subject, Isaac

Jackson, was also arrested for disorderly conduct and handcuffed.  Id.

According to Kennedy's 2/15/90 report (see Exhibit "D"), the victim of the purse

snatching was brought to the security office, and could not identify the petitioner and

Jackson as the perpetrators.  Subsequently, according to Kennedy's report, Jackson

moved toward Kennedy and moved as if to kick him, but was grabbed by Procaccini and

"pushed against the desk."  The report goes on to note that "Joyce also had to be

restrained & was held against the wall area until the situation was under control."  Id.

On the basis of its investigation of the incident, the Office of Internal Affairs

concluded as follows:

> "Officer Kennedy's version of how the prisoners were treated is in direct
> conflict with other statements and physical evidence.  Several participants
> reported that a handcuffed Mr. Joyce was punched in the face by Officer
> Procaccini.  This appears to be supported by photos documenting an injury
> to Joyce's left cheek area.  This injury was confirmed by several other witnesses.
>
> Officer Kennedy did not advise any superior officer of the incident.  Further,
> the official report filed by Officer Kennedy on the night of the incident and his
> statement given at the Office of Internal Affairs appear less than completely
> credible, in that they conflict with statements of several participants and the
> physical evidence.
>
> It appears that Officer Kennedy violated the following Rules and Regulations:
>
> Rule 1.1       Which states:  'Members of the Department shall familiarize
> themselves with these Rules and Regulations and each member shall conform
> and abide by same.'
>
> Rule 1.3:      Which states:  'All members of the Department shall be subject
> To and shall obey all Rules and Regulations, orders, instructions or requirements,
> whether mentioned in regard to a specific assignment or rank, or in the General
> Rules and Regulations, or emanating from competent authority from time to time,
> insofar as may be applicable.'

10

Rule 3.12     Which states:  'Every member of the Department shall, without unnecessary delay, transmit to his/her superior officer any information of any unusual occurrences, important casualty, serious crime or unsafe public condition existing or occurring in his presence or which he is made aware of and shall take proper police actions with regard thereto.'

Rule 4.1     Which states:  'Any member of the Department who conducts himself/herself in such a manner as to discredit the Department shall be guilty of conduct unbecoming an officer, even though such conduct is not specifically set forth in the rules.'

Rule 5.3  (two counts) Which states:  'No member of the Department shall willfully depart from the truth, either in giving testimony, or in connection with any official order received by him/her, or in his/her official duties.'"

See Exhibit "A."

For the reasons that follow, the petitioner's federal petition for writ of habeas corpus should be granted.

## III.     ARGUMENT

The petition for a writ of habeas corpus should be granted, and a new trial ordered, because:  (1) the petitioner was wrongly deprived of his fundamental constitutional right to confront the state's lead witness, Sgt. Prentice, with evidence of bias arising from the conviction of a police officer in Prentice's unit for beating the petitioner in a previous incident; and (2) the petitioner was deprived of effective assistance of counsel where his trial attorney failed to offer the investigation and findings of the Internal Affairs Division, which revealed that Prentice's immediate subordinate in the investigation, Det. Kennedy, had himself been charged with covering up the previous incident.

A.   Petitioner's confrontation claim is meritorious because the trial
     Court's exclusion of evidence of bias on the part of Sgt. Prentice
     was not harmless beyond a reasonable doubt.

The Respondent's arguments notwithstanding, the trial court's exclusion of any evidence of motive, interest or bias on the part of Sgt. Prentice was clearly harmful where it effectively deprived the petitioner of any opportunity whatsoever to present a defense.

1.   *Legal Standard*

Pursuant to 28 U.S.C. § 2254, a writ of habeas corpus may issue where a state court adjudication is contrary to clearly established federal law or involved an unreasonable application of federal law.  Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2004).

For the reasons that follow, the Connecticut courts' adjudication of the petitioner's confrontation claim is both contrary to federal law and involved the unreasonable application of federal law in accordance with the Supreme Court precedents cited below.

2.   *The Appellate Court's ruling on petitioner's confrontation claim*

The Respondent has conceded for purposes of this proceeding that the Appellate Court properly held that the trial court erred in not allowing the defense to cross-examine Prentice about the Procaccini incident and to present the testimony of Off. .Daniels as extrinsic impeachment evidence.  See Respondent's Brief, at 11.

It is well established that the defendant in a state criminal proceeding is entitled fairly and fully to confront and to cross-examine the witnesses against him.  U.S. Const., amends. VI, XIV; Davis v. Alaska, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347

(1974); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297

(1973); <u>Douglas v. Alabama</u>, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965).

An important function of cross-examination is the exposure of a witness' motivation in

testifying.  <u>Greene v. McElroy</u>, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377

(1959).   "Whether rooted directly in the Due Process Clause of the Fourteenth

Amendment. . .  or [in the] Confrontation Clause of the Sixth Amendment. . .  the

Constitution guarantees criminal defendants a meaningful opportunity to present a

complete defense. . .  This opportunity would be a meaningless one [in the absence of]

competent, reliable evidence bearing on the credibility of a confession when such

evidence is central to a defendant's claim of innocence.  <u>Crane v. Kentucky</u>, 476 U.S.

683, 690-91, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)(internal citations omitted).

 As such, there appears to be no dispute that the petitioner was deprived of his

fundamental rights to confrontation and to present a defense.

  3. *<u>The Appellate Court's application of law was unreasonable where exclusion</u>*
   *<u>of the proffered evidence was not harmless beyond a reasonable doubt</u>.*

 Although the Appellate Court correctly found that the trial court violated the

petitioner's federal constitutional right to confrontation in disallowing the defense to

expose Prentice's bias to the jury, it nonetheless improperly concluded that the excluded

evidence was "cumulative," and was therefore harmless beyond a reasonable doubt.

 In this regard, the test for harmlessness "is whether it appears 'beyond a

reasonable doubt that the error complained of did not contribute to the verdict obtained.'"

<u>Chapman v. California</u>, 386 U.S. 18, 23-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

Under <u>Chapman</u> and its progeny, reversal is required if "there is a reasonable possibility

that the evidence complained of might have contributed to the conviction." Id.; see also Arizona v. Fulminante, 499 U.S. 279, 296, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (confession is harmless error if it "did not contribute to [defendant's] conviction"); Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)(holding that Chapman excuses error that were "harmless" in terms of their effect on the fact finding process at trial); see also Yates v. Evatt, 500 U.S. 391, 403, 111 S. Ct. 1884, 114 L. Ed. 2d 432 (1991).

The Appellate Court erred because the proffered cross-examination of Prentice and direct testimony of Daniels would have presented the jury with evidence from which they could have drawn reasonable inferences about Prentice's bias against the petitioner and his motive in testifying, thereby permitting them to judge his credibility and the reliability of his testimony which, in light of his solitary role in obtaining the petitioner's statements, played a critical role in this case.

It bears emphasis in this regard that Prentice and Procaccini were members of the same unit, the Fifth Platoon, which Off. Daniels described as "like a family" which worked the same shifts and spent off-duty time together playing football and frequenting the same bar. (See Criminal Trial Transcript, at 705-07.) Prentice acknowledged that he had known Procaccini and that they had mutual friends on the police force, and also acknowledged that he was aware of the incident which led to Procaccini leaving the police force and that Procaccini ultimately went to federal prison. Id.581, 584, 601-02. Prentice also testified that he was informed of petitioner's role in Procaccini's conviction by Kennedy. Id. 589, 593-94.

Similarly, Daniels testified that members of the Fifth Platoon, *including Prentice*, ostracized him after he truthfully reported the Procaccini incident to his superiors. Id.707, 709-10.  Daniels later testified that he received death threats, had a hang man's noose placed in his patrol car, and did not receive back-up in dangerous situations on multiple occasions.  (See Habeas Transcript, 5/15/00, 12-13, 23-24.)  It is eminently clear that members of the Bridgeport Police Department were extremely upset about Procaccini's conviction, and willing to go to great lengths to obtain revenge, even as against one of their own brother officers.  "The law recognizes 'the force of hostile emotion, as influencing the probability of truth-telling. . . and a partiality of mind is therefore always relevant as discrediting the witness and affecting the weight of his testimony. . ." U.S. v. Kartman, 417 F.2d 893, 897 (9th Cir. 1969).

Respondent argues, without merit, that the Appellate Court decision was reasonable because the petitioner's alleged confession was "cumulative" of the testimony of John Hanna and Alice Hanna, the brother and wife of the victim, respectively, who were interviewed at the scene and shown photographs of the petitioner by Det. Kennedy. This argument misses the mark.  Under these circumstances, the only question the Appellate Court faced under the test articulated in Chapman was whether the jurors' hearing of the petitioner's alleged statements could be shown beyond a reasonable doubt not to have affected the verdict.  It has been widely recognized that "[a] confession is like no other evidence.  Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . .  Certainly, confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so. . ." Arizona v. Fulminante, supra,

499 U.S. at 296.  The Appellate Court therefore unreasonably concluded that Prentice's testimony and the introduction of the petitioner's statements was harmless beyond a reasonable doubt.

Accordingly, the petition for writ of habeas corpus should be granted.

B.   Petitioner's ineffective assistance claim is meritorious because evidence of Det.Kennedy's bias against the petitioner was relevant to the credibility of the police investigation of the Wood Avenue incident and could have changed the outcome of the case.

The trial court's improper denial of petitioner's right to confront the police witnesses was compounded by counsel's failure to call attention to the bias harbored against the petitioner by one of the investigating police officers, Det. Kennedy, who had previously been charged by the Office of Internal Affairs with attempting to cover-up Procaccini's beating of the petitioner.  Kennedy played an important role in the investigation of the Wood Avenue incident, including interviewing the witnesses John Hanna and Alice Hanna and showing them photos of petitioner.  Both later testified at trial and identified the petitioner as the perpetrator.

1.   *Legal Standard*

A petition for writ of habeas corpus may be granted where the petitioner shows:  (1) that the performance of his counsel was deficient, in that it was outside the range of reasonable, professional assistance of a competent criminal trial lawyer; and (2) that the deficient performance prejudiced the petitioner in the sense that there is a reasonable probability that, but for the deficient performance, the results of the underlying proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

16

For the reasons that follow, the petition for writ of habeas corpus should be granted.

2. *Petitioner's trial counsel should have offered evidence of Off.Kennedy's role in and attempted cover-up of the Procaccini incident*.

Petitioner also claims that his trial counsel was ineffective for failing to investigate, develop and offer evidence regarding Det. Kennedy's central roles in both the cover up of the 2/15/90 Procaccini incident and the 8/1/91 Wood Avenue investigation.

As previously noted, at trial of the underlying criminal case, Det. Sgt. Glen Prentice was the state's lead witness, and testified regarding the course of the investigation and the taking of petitioner's statements.  While it is true that petitioner's trial counsel offered cross-examination of Prentice and direct examination of Daniels concerning Prentice's possible bias against the defendant as a result of the conviction of Off.Procaccini, it bears emphasis that the offer contained no reference whatsoever to Kennedy's role in attempting to cover up the 2/15/90 Procaccini incident, the Internal Affairs charges brought against Kennedy as a result of his conduct, or Kennedy's subsequent role in the investigation of the Wood Avenue incident on 8/1/91, including his early and extensive involvement at the crime scene with John Hanna and Alice Hanna, the brother and wife of the victim, Nicolas Hanna.

As noted above, Kennedy filed a police incident report regarding the 2/15/90 Bridgeport Train Station incident which omitted reference to any excessive force used by Off.Procaccini.  See Exhibit "D" (2/15/90 Police Incident Report prepared by Off. Kennedy).  He subsequently gave a false statement under oath to Internal Affairs officers in which he denied that any excessive force was used against the handcuffed petitioner by Procaccini.  See Exhibit "B" (Sworn Statement of Off. Kennedy dated 3/23/90).  As a

result of his misconduct, he was charged by Internal Affairs with multiple violations of departmental rules and regulations, including (but not limited to) willful departure from the truth, failure to report, and conduct unbecoming a police officer.  See Exhibit "A" (Internal Affairs Report dated March 30, 1990).  Kennedy clearly had ample reason to be biased against the petitioner for his own reasons.  Further, Prentice testified that it was Kennedy who informed him that petitioner was involved in the incident which led to Procaccini's conviction on federal civil rights charges.  (See Criminal Trial Transcript at).

3. *The state court unreasonably found that trial counsel was effective, and petitioner was prejudiced by counsel's deficient performance*.

The significance of trial counsel's failure in this regard is readily apparent where, as previously noted, the Appellate Court's determination on direct appeal that the improper exclusion of evidence of the Procaccini incident amounted to harmless error, was based upon the fact that the victim's "wife and brother testified that he was in the store, and John Hanna identified him as the killer."  Joyce, 45 Conn. App. at 397.

Significantly, Kennedy testified at the habeas trial that Mrs. Hanna first identified the petitioner as the perpetrator in connection with Kennedy showing her petitioner's photograph on the day of the incident.  (See Habeas Trial Transcript 5/15/00, at 43).  Kennedy also traveled to Hartford with Prentice to apprehend the petitioner at St. Francis Hospital, and also testified that he brought the petitioner food during the course of petitioner's interrogation by Prentice.  Id.49, 93.  As such, Kennedy's role in the investigation of the Wood Avenue incident was substantial, and crucial to the state's case.

Respondent argues that petitioner could not have offered this evidence because

". . .Kennedy did not testify before the jury at the petitioner's 1993 criminal trial."
Respondent's Brief, at 18. This argument is totally without merit.   As the lead
investigating officer, Prentice could have properly been questioned as to Kennedy's role
in the investigation, including his interviews with John and Alice Hanna.  Petitioner's
trial counsel could also have questioned Prentice as to whether he was aware of
Kennedy's own involvement in the Procaccini incident, and that Kennedy was
investigated by Internal Affairs and brought up on charges.  As the lead investigating
officer, Prentice could have been questioned as to the propriety of having Det. Kennedy,
his subordinate, showing photographs of the petitioner to witnesses at the scene of the
incident given Kennedy's history with the petitioner.

Further, counsel could have called Det. Kennedy himself to testify during the
defense case.  Had he done so, he could have examined Kennedy as to his role in the
investigation of the 8/1/91 Wood Avenue incident, including his interviews with John
Hanna and Alice Hanna.  Counsel could also have questioned Kennedy as to any bias he
had against the petitioner during his investigation of the Wood Avenue incident as a
result of the Procaccini incident.  As extrinsic evidence of bias and poor veracity, counsel
could have offered into evidence the Internal Affairs Report (see Exhibit "A") charging
Kennedy with covering-up the incident and lying to his superiors, and his false statement
under oath that Procaccini did not use excessive force against petitioner (see Exhibit
"B").  A party is permitted under Connecticut law to impeach his own witness for bias
and poor veracity:

> "[T]here is no longer justification for the common law rule prohibiting a party
> from impeaching his own witness. Witnesses do not 'belong' to the party who
> called them. . . and a party no longer vouches for the credibility of his own

witness. In many situations a party may have to call a particular witness to the stand even though the testimony will not be completely favorable. If the unfavorable testimony is inaccurate and impeachment is not allowed, the inaccuracies will go unexposed and the truth finding function of our trial system will be hindered. . . We therefore hold that the credibility of a witness may be impeached by the party calling [the witness] without a showing of surprise, hostility or adversity. A party may impeach his own witness in the same manner as an opposing party's witness and may demonstrate the witness' bias or bad character for veracity and may impeach the witness using prior inconsistent statements."

State v. Graham, 200 Conn. 9, 17, 509 A.2d 493 (1986)

On direct appeal, Respondent argued that the trial court's exclusion of evidence of the Procaccini incident during cross-examination of Prentice was harmless because it was "cumulative" of the testimony of eye witnesses, including John Hanna and Alice Hanna. Respondent now seeks to "have it both ways" by arguing that Det. Kennedy played only a minor role in the investigation, when in fact it was he who interviewed John and Alice Hanna and showed them photos of the petitioner at the scene.  See Respondent's Brief, at 18.  Respondent's arguments to the contrary notwithstanding, it is clear that evidence of Det. Kennedy's history would have been powerful evidence of police bias during the investigation of the Wood Avenue incident, and petitioner's trial counsel should have developed and offered this evidence at trial.

Accordingly, the petition for writ of habeas corpus should be granted.

**IV.    SUMMATION**

Through the actions of the trial court and the omissions of his trial counsel, the petitioner was denied his fundamental right to present a meaningful defense to the charges against him, based on powerful and compelling evidence of police bias and misconduct that could have created reasonable doubt in the minds of the jury as to the

reliability of the petitioner's confession and the credibility of the police investigation as a whole.

As held by the Connecticut Appellate Court, trial counsel should have been permitted to cross-examine Sgt. Prentice as to possible bias against the petitioner resulting from the conviction of a member of his unit, Off. Procaccini, for beating the petitioner in a prior incident. Trial counsel should also have been permitted to offer the testimony of Off. Daniels as extrinsic evidence of this bias. Off. Daniels' testimony that he received death threats from fellow police officers as a result of truthfully reporting the incident would have been compelling evidence of police bias and animus against the petitioner.

The trial court's improper denial of petitioner's right to confront the police witnesses was compounded by counsel's failure to call attention to the bias harbored against the petitioner by one of the investigating police officers, Det. Kennedy, who was charged by the Office of Internal Affairs with attempting to cover-up Procaccini's beating of the petitioner. Kennedy played an important role in the investigation of the Wood Avenue incident, including interviewing the witnesses John Hanna and Alice Hanna and showing them photos of petitioner. Both later testified at trial and identified the petitioner as the perpetrator. Kennedy's involvement and attempted cover-up of the beating of the petitioner by Off. Procaccini would also have been powerful evidence of police bias during the investigation of the Wood Avenue incident, and petitioner's trial counsel should have developed and offered this evidence at trial.

On direct appeal, the Connecticut Appellate Court concluded that the trial court's exclusion of evidence of the Procaccini incident during cross-examination of Prentice

was harmless because it bore only on the petitioner's alleged confession, and was therefore "cumulative" of the testimony of eye witnesses, including John Hanna and Alice Hanna. Even if we assume, *arguendo*, that this is true (which is not conceded), then evidence that John Hanna and Alice Hanna were contacted and interviewed at the scene by an officer with a similar, if not stronger, bias against the petitioner as a result of the Procaccini incident makes any such finding of harmlessness wholly untenable.

## V.    CONCLUSION

For the foregoing reasons, petitioner's confinement is in violation of the Constitution or laws or treaties of the United States. Therefore, his claim for relief should be granted, his conviction and sentence vacated, and the case should be remanded to the state court for further proceedings, including a new trial.

Respectfully submitted,

THE PETITIONER
DAVID L. JOYCE

BY:_____
          Richard L. Grant
          36 Tamarack Ave. PMB #213
          Danbury, CT 06811
          Tel. (203)778-8075
          Fax (203) 778-8075
          Federal Court #CT20708

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing motion was sent via regular first

class mail to all counsel and pro se parties of record on today's date as follows:

Jo Anne Sulik
Appellate Bureau
Chief State's Attorneys Office
300 Corporate Place
Rocky Hill, CT 06067
Tel. 860-258-5800
Attorney for the Respondents

David L. Joyce #92272
Northern C.I., 1E-111
P.O. Box 665
Somers, CT 06067

_____
Richard L. Grant