## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID L. JOYCE #92272 | : | CASE #3: 03-CV-655 (PCD) |
| Petitioner, | : | |
| -against- | : | |
| THERESA C. LANTZ, COMMISSIONER OF CONNECTICUT DEPARTMENT OF CORRECTION, AND HECTOR RODRIGUEZ WARDEN CASHER CORRECTIONAL INSTITUTION | : : : | |
| | : | NOVEMBER 16, 2004 |

### NOTICE OF FILING PETITIONER'S EXHIBITS IN SUPPORT OF REPLY TO RESPONDENT'S OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

PLEASE TAKE NOTICE that, pursuant to 28 USC § 2254, the petitioner hereby files the attached exhibits in support of the Petitioner's Reply dated November 15, 2004 to the Respondent's Memorandum in Opposition to the Petition for Writ of Habeas Corpus dated September 9, 2004, as follows:

(1)  Exhibit "A"  Internal Affairs Report dated March 30, 1990 with specifications of charges against Off. John Kennedy in connection with Bridgeport Train Station incident of February 15, 1990

(2)  Exhibit "B"  Sworn Statement of Off. John Kennedy dated March 23, 1990 in reference to Bridgeport Train Station incident of February 15, 1990

(3)  Exhibit "C"  Sworn Statement Off. David Daniels dated March 15, 1990 in reference to incident at Bridgeport Train Station on February 15, 1990

(4)  Exhibit "D"  Police Incident Report dated February 15, 1990 prepared by Off. John Kennedy in reference to Bridgeport Train Station incident of the same date

PLEASE TAKE FURTHER NOTICE that the above-reference exhibits have been filed both manually and in .pdf format.

Respectfully submitted,
THE PETITIONER

BY: _____

Richard L. Grant, Esq.
36 Tamarack Ave. PMB #213
Danbury, CT 06811
Tel. 203-778-8075
Fax  203-778-8075
Federal Court # CT20708

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent by regular first class mail on today's date to all counsel and pro se parties of record, as follows:

Jo Anne Sulik
Appellate Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT 06067
Tel. 860-258-5800
Attorney for the Respondents

David L. Joyce #92272
Northern C.I.
1E-111
P.O. Box 665
Somers, CT 06071

_____
Richard L. Grant

**EXHIBIT "A"**

MARY CHAPAR MORAN
Mayor

## CITY OF BRIDGEPORT
# DEPARTMENT OF POLICE
### 300 CONGRESS STREET
### BRIDGEPORT, CONNECTICUT 06604

GUY M. IZZO
Chief of Police



To:     Mayor Mary Moran

        Marcia Goodman, President
        Board of Police Commissioners

        A/Chief Guy Izzo

From:   Office of Internal Affairs

Re:     O.I.A. case #0020

Date:   March 30, 1990


## I.   THE INCIDENT

On February 15, 1990, at approximately 2000 hours, Police Officer John Kennedy effected the arrest of two males at the Bridgeport Railroad Station.  The following is a synopsis of the official report #90-0215267, filed by Officer Kennedy in reference to these arrests, and the incident which led to them.

Police Officer John Kennedy was working an outside overtime detail at the Transportation Parcel Partners (Bridgeport Bus Terminal), 35 John Street, from 1500 hours to 2300 hours (3 p.m. to 11 p.m.), which requires a uniformed Police Officer.

At approximately 2000 hours, Police Officer John Kennedy was returning from his dinner break in his private vehicle, and was about to park when he was approached by two security guards, who were later identified as (1) James Reeves, who is employed by Command Security and working at the Bridgeport Railroad Station, and (2) David Goodman, who worked as a security guard for Connecticut National Bank.  These guards informed Officer Kennedy that a robbery (purse snatch) had just occurred in the Train Station, and that they (the guards) were pursuing two black males, responsible for the robbery.  Officer Kennedy had noticed two black males running up Gold Street and informed the guards of this. The guards pursued these black males on foot, and Officer Kennedy used his private vehicle.  A short distance away and a short time later Officer Kennedy came upon the two security guards and two black males who were involved in a verbal argument.  Officer Kennedy exited his vehicle and took charge of the scene.  The two black male suspects were later identified as Issac Jackson of 1138 Park Avenue, Bridgeport, age 28, and David Joyce of 155 Colorado Avenue, Bridgeport, age 26.  Officer Kennedy identified himself to

I-A

both suspects as a regular Bridgeport Police Officer. According to Officer Kennedy's report both Jackson and Joyce were loud and boisterous and using obscenities. Both men denied any involvement in a purse snatch, and both had a strong odor of alcohol about them.

Both Jackson and Joyce agreed to return to the train station accompanied by the security guards, with Officer Kennedy responding in his own car. Mr. Jackson, with security guard Reeves, entered the building ahead of Officer Kennedy, who had Mr. Joyce with him accompanied by security guard Goodman. Outside the train terminal Mr. Joyce had become unruly; being loud, boisterous, using profanities, and flailing his arms. Officer Kennedy warned Mr. Joyce several times about his disorderly conduct. Mr. Joyce was placed under arrest, and his hands were then handcuffed behind his back by Officer Kennedy before entering the train terminal.

Upon entering the train terminal with Mr. Joyce, Officer Kennedy placed Mr. Joyce in the security office. Mr. Jackson, upon seeing his friend handcuffed, became excited according to Officer Kennedy's report. Mr. Jackson was loud, using profanity. Mr. Jackson was also warned repeatedly to be quiet or he would be placed under arrest. It was at this time Officer Kennedy requested Security Guard Reeves' handcuffs to restrain Mr. Jackson. Jackson then had his hands cuffed behind his back and was also placed inside the security office with Mr. Joyce.

According to Officer Kennedy's report both parties refused to stay stationary inside the office, and they both became very threatening. And Officer Kennedy felt an escape attempt was imminent. Security Guard Goodman called the Police Department for assistance, per order of Officer Kennedy.

Officer Kennedy's report continued with the arrival of Officer Joseph Procaccini, who assisted him in handling the arrested subjects. According to the report, at this time, Jackson attempted to kick Officer Kennedy. Mr. Jackson was grabbed by Officer Procaccini and pushed backward causing Mr. Jackson to fall back against a desk in the security office, roll off and onto the floor. Jackson also attempted to kick anyone in the area. Mr. Joyce also had to be restrained against a wall until the situation was under control. Both Jackson and Joyce were then transported to the booking area to be processed.

## II.  THE INVESTIGATION

On February 16, 1990 Sgt. William Connolly received a call from Captain William Giblin, Commander of the "C" shift.  Captain Giblin informed Sgt. Connolly that he had been informed by one of his sergeants that Police Officer David Daniels was quite upset about arrests that took place on February 15, 1990 at the Railroad Station.  Captain Giblin went on to say that Officer Daniels had related to him that he felt that the prisoners from the arrest at the train station had been physically abused.

Arrangements were then made to have Captain Giblin bring Officer Daniels to the Office of Internal Affairs to be interviewed about the incident.

Sgt. Connolly contacted A/Chief Izzo to apprise him of the situation.  A/Chief Izzo informed Sgt. Connolly that the Captain had spoken to him earlier, and that he told the Captain to contact O.I.A. and to have them begin an investigation immediately.

The investigation opens with the interview of Officer David Daniels. The following is a synopsis of his statement:

Officer Daniels responded to the Bridgeport Railroad Station on February 15, 1990 in response to an officer needs assistance call. He arrived approximately at the same time Officer Joseph Procaccini arrived on the scene. He reported that both Jackson and Joyce, the arrested subjects, were loud and boisterous and using profanitites. He reported their hands were handcuffed behind their backs and that they posed no physical threat to any of the officers. At this point Jackson proclaimed his innocence to Officer Daniels. Officer Daniels related that he believes this was done because of a casual "street" acquaintance formed while growing up in the P.T. Barnum complex. Officer Procaccini became engaged in a verbal argument with Mr. Jackson, and for no apparent reason grabbed Mr. Jackson by his coat lapels, pulled him forward, then shoved him backward causing Jackson to land on top of a desk, roll off and fall to the floor. At this point Mr. Joyce began a verbal attack directed at Officer Procaccini because of the treatment of Mr. Jackson.

Mr. Joyce, while still handcuffed, moved toward Officer Procaccini protesting his treatment of Jackson. At this time Officer Procaccini punched Mr. Joyce twice in the face, and Joyce received an injury under his left eye.

Officer Daniels related he moved to help Jackson off the floor and escorted him from the office to be transported to the booking area. It is during this time, while leaving the train station, that Mr. Jackson was complaining to Officer Daniels of the treatment both he and Mr. Joyce received.

When Officer Daniels arrived at the booking area with Mr. Jackson he turned him over to Officer Kirkland to be processed.

Officer Daniels explained that as a youth growing up in P.T. Barnum he had observed this type of treatment before by police officers, and "felt it was wrong then and does now". During the interview Officer Daniels was observed to be emotionally upset and stated he just didn't know what to do until he was called to the Captain's office. He expressed that he felt ashamed and disappointed with himself over the entire situation in not acting sooner.

TL - 2

On March 22, 1990 Officer John Kennedy was interviewed. His statement supported his initial report of the incident, adding some details which did not change the tone or content of that report.

In response to questions posed to him by Internal Affairs, Officer Kennedy emphasized that he did not hit or kick either of the prisoners, nor did he see anyone else hit or kick or abuse either of the prisoners.

On February 21, 1990 Officer Philip Purciello was interviewed. A synopsis of that interview is as follows:

On February 15, 1990 Officer Purciello responded to a dispatch of officer needs assistance at the Bridgeport Railroad Station. When he arrived several other officers were already in the security office with Officers Kennedy and Procaccini, and the suspects, Mr. Jackson and Mr. Joyce. Officer Purciello maintained a position outside the security office to the right.

From his position he could at first see only one handcuffed prisoner, Mr. Jackson, who was yelling and swearing in Officer Kennedy's face. Officer Purciello stated that it appeared to him as though Officer Kennedy wanted to turn around and get away from Jackson, but could not due to the size and number of persons in the office.

Officer Purciello observed Officer Procaccini push Jackson away from Officer Kennedy in what he believed was an attempt to help Kennedy, and stated that it looked like Jackson lost his balance and fell onto a desk then onto the floor.

Officer Purciello then looked further into the security office, and it was then that he noticed another handcuffed party in the room. Officer Purciello noticed Officer Daniels next to the suspect who had fallen, and remarked that from their conversation he believed they were good friends. As Officer Purciello stepped back outside the doorway, his attention was diverted by Security Guard Goodman telling him about the original purse snatch incident. The next time Officer Purciello saw the suspects was when they were being walked out of the office.

Officer Purciello then went to his patrol car where he observed Officer Daniels, whom he believed was taking the handcuffs off Mr. Jackson. Officer Purciello told Officer Daniels not to take the handcuffs off Jackson to which Officer Daniels replied, "they're too tight". Officer Purciello then told Officer Daniels to take the suspect to booking in another vehicle, because Purciello would not transport a suspect who was not handcuffed. Purciello then got into his vehicle and left the scene.

On March 12, 1990 Officer Peter Gelozin was interviewed to clarify a written report he submitted on February 23, 1990.  A synopsis of his statement and that report is as follows:

On February 15, 1990 Officer Gelozin responded to the Bridgeport Railroad Station on a broadcast of officer needs help.  When he arrived at the scene he did not go in to the security office because the office was small, and already inside were Officers Kennedy and Procaccini, along with the two arrested subjects.  Officer Gelozin stood in the doorway of the security office to the left.

One of the parties, whom Officer Gelozin knows as Ike, Issac Jackson, was shouting obscene language at Officer Kennedy.  Officer Gelozin stated that he observed Officer Procaccini push Ike away, and saw Jackson fall on top of a desk.  Officer Gelozin did not remember seeing Jackson fall to the floor or be picked up or helped by anyone.  He stated that Officers Kennedy and Procaccini were in front of him, and when Jackson was picked up or helped up is when everyone walked out of the office.

Officer Gelozin emphatically stressed the fact that he did not see anyone get kicked or punched, nor did he notice any injury to Mr. Joyce.

Two interviews were conducted with James Reeves.  The first interview was on February 19, 1990, and the second, for clarification, on February 22, 1990.  The summary is as follows:

Mr. Reeves was vague as to what actually happened in the security office other than to infer that it was something out of the ordinary.  His two statements were contradictory to each other, and there were inconsistencies within each one.  In one interview he placed himself outside of the office.  In the other he admitted to being inside, a witness to the incident.  In one statement he stated that he didn't see anything, in the other he stated he did see something.  His first statement appears to correspond to Officer Kennedy's official version of the incident, but his second strays from that somewhat.  At no time does he accuse the officers of wrongdoing.

On February 19, 1990 an interview was conducted with David Goodman.  A summary of his interview is as follows:

Goodman could offer  little insight into what happened in the security office because he placed himself outside the office in the lobby area when the alleged incident took place.  He did confirm that both Jackson and Joyce are loud, boisterous, and appeared intoxicated.

An interview was also conducted on February 28, 1990 by Det. Costanzo and Sgt. Middleton with Mr. David Joyce. The synopsis of that interview is as follows:

Mr. Joyce related that while returning to the train station with Officer Kennedy he was placed under arrest, his hands were handcuffed behind his back, and once inside the train station he was placed in the security office by Officer Kennedy. Shortly thereafter he saw Mr. Jackson get arrested, hands handcuffed behind his back, and also placed in the security office. They were protesting their arrests when other officers entered the room. Mr. Joyce related that Mr. Jackson was loud and argumentative with the officers, and when Officer Procaccini pushed Ike, Mr. Jackson, into a desk and he fell to the floor, Joyce then stated, "I got scared because there was no cause for it". Joyce protested the treatment of Jackson to Officer Procaccini, who Joyce then stated said, "all right, you shut up". Joyce further related that at the time Officer Procaccini punched him in the eye while he had his hands cuffed behind his back. Joyce stated he became "lost" from the punch.

During a further interview Joyce stated that he couldn't remember too much of what happened after being punched.

A running dialogue continued between Joyce and Officer Procaccini as Joyce was led from the train station to be transported to booking. Joyce continued that when he arrived in booking he complained about his injury and asked for medical treatment but received none. He was then processed and released.

On February 28, 1990 Det. Costanzo and Sgt. Middleton conducted an interview with Mr. Issac Jackson. What follows is a synopsis of that interview:

Mr. Jackson stated that he and Mr.Joyce had been drinking, but voluntarily returned to the train station to clear up the accusation as reported in police file #90-0215267. Mr. Jackson entered the train station with one of the security guards without Mr. Joyce. When Officer Kennedy entered the train station with Mr. Joyce, Mr. Jackson noticed that Mr. Joyce had his hands behind his back and was handcuffed.

Officer Kennedy placed Mr. Joyce in the security office. Mr. Jackson protested the arrest of his friend to Officer Kennedy and a verbal exchange ensued between them, with Officer Kennedy warning Mr. Jackson with imminent arrest. Mr. Jackson replied, "so be it". Mr. Jackson was placed under arrest and handcuffed with his hands behind his back. Mr. Jackson was protesting his arrest and the arrest of Mr. Joyce when other polcie officers arrived at the security office. When Officer Procaccini arrived Mr. Jackson was still protesting his arrest. He stated that Officer Procaccini asked, "What's with the punks?", to which Mr. Jackson took immediate offense and he questioned Officer Procaccini with, "Who are you calling a punk? You're a punk". Mr. Jackson related that Officer Procaccini grabbed him, shoved him backwards, he fell onto a desk, rolled off onto the floor hitting his head against a wall and landed on his back, with his hands cuffed behind him. His friend, David Joyce, protested this treatment and was punched in the face by Officer Procaccini. Then Officer Procaccini attempted to stomp Mr. Jackson in the groin area, and Jackson wrapped his legs around Procaccini's to prevent this.

Mr. Jackson related that he appealed to Officer Daniels, who was present, to help him. Officer Daniels, along with Officer Procaccini, picked Mr. Jackson up off the floor and Mr. Jackson was escorted from the office by Officer Daniels.

Jackson went on to say that he made numerous complaints to the officers present about his and Joyce's treatment, but no one did anything about his complaints.

He was processed and later released.

*Several issues were raised here and will be addressed in a separate report (see case #0042).

π - 9

On February 19, 1990 Officer David Santos was interviewed.
Part of his involvement in this incident takes place after the
fact.  The issues of Santos' arrest of Jackson and the conduct
of Santos in booking will be addressed in a separate report.
(see case #0042)

In his statement Officer Santos confirmed the following:
(1) Santos transported Officer Daniels and arrested subject
Issac Jackson to booking from the train station;  (2) Santos
heard conversation between Officer Daniels and Issac Jackson
while en route to booking, wherein Jackson complained to Officer
Daniels that he was handcuffed and kicked by police while on
the ground, specifically referring to being "kicked in the balls";
(3) Santos heard Jackson tell Officer Daniels that he, Jackson,
had said to one of the officers at the scene that it would take
more than one cop to cuff him, and kept referring to the other
officers as the "fucking white cops";  (4) Santos is also a
certified Emergency Medical Technician who stated he would have
provided medical assistance or cause to have provided medical
assistance to anyone who was injured or who requested assistance.
His contact with the prisoners was limited but he stated that
he did not notice any injury on either prisoner;  (5) Santos and
Jackson engaged in a verbal exchange once the suspects were in the
holding cell.  The exchange stemmed from Jackson recognizing
Santos as the officer who had arrested him some time ago.

π - 10

Officer James Kirkland, who was a booking officer on the evening of February 15, 1990, was interviewed on February 16, 1990.  Much of his statement will be addressed as a separate issue.  (see case #0042)  Officer Kirkland's part in this case took place after the incident at the railroad station, but his interview  confirmed the following:

(1) The two subjects, Issac Jackson and David Joyce, were brought to booking;  (2) Mr. Joyce did have a swelling on the left side of his face under his eye;  (3) Joyce stated to Kirkland that a police officer hit him;  (4) Both subjects were yelling and appeared to be intoxicated;  (5) Officer Kirkland did not videotape the subjects.

This is the extent of Officer Kirkland's involvement with this case.

π - 11

Officer Carnetha Padgett, who was assigned to the booking area on February 15, 1990, was interviewed on February 19, 1990. Her participation in this case was after the fact and will be addressed in a separate report.  (see case #0042)  In her statement she stated the following:

(1) Both arrested parties were loud, upset, and intoxicated; (2) She did not notice any injury on either subject;  (3) Neither subject claimed any injury nor asked for medical attention; (4) Neither subject asked to speak to a supervisor to make a complaint.

π - 12

On February 20, 1990 Officer Joseph Procaccini was interviewed. His version of the events generally followed the official report filed by Officer John Kennedy, with a few additional details.

He confirmed the fact that Issac Jackson was yelling and swearing in Officer Kennedy's face. Officer Procaccini stated that he told Jackson to get away from Kennedy. When Jackson persisted in yelling profanities at Officer Kennedy, Officer Procaccini observed him backing up a bit as if to throw a kick at Officer Kennedy. Officer Procaccini grabbed Jackson with both hands and shoved him back, causing him to go on topof the desk and fall off onto the floor.

Officer Procaccini then stated that when Jackson fell to the floor Jackson grabbed Officer Procaccini's legs in a scissor lock. Officer Procaccini stated he pushed Jackson's legs off himself with his hands.

Officer Procaccini stated that the other subject, Joyce, "came to his right real fast", and the he didn't know what Joyce was going to do. Procaccini stated he pushed Joyce's face against the wall with his hand and that Joyce was "still standing" and stopped coming at him. When Procaccini pushed Joyce's face up against the wall he stated he did not bang Joyce's head, and that Joyce "didn't go down", "was still standing but still moving his body like resisting".

Officer Procaccini stated that he himself was angry, and after the confrontation with the subjects, yelled to them as they were being led away, "cops aren't mother fuckers or punks". He claimed it was apparent to him that they, the subjects, "had no respect for police officers at all".

Procaccini denied ever kicking Jackson, nor did he see anyone else kick Jackson. He also denied punching Joyce, but claimed he pushed his face with an open hand. He further stated that neither subject complained of any injury, nor did he observe any injury on either one.

π - 13

III.  <u>FINDINGS</u>:  Referred to Board of Police Commissioners

<u>Police Officer David Daniels</u>

Officer Daniels, by his own admission, recognized this incident to be an unusual occurrence, and stated that he did not know what to do.  In that Officer Daniels did not report the incident to any superior officer until he was interviewed by Captain Giblin, it appears he violated the following Rules and Regulations:

<u>Rule 1.1</u>  Which states: "Members of the Department shall familiarize themselves with these Rules and Regulations and each member shall conform and abide by same."

<u>Rule 1.3</u>  Which states: "All members of the Department shall be subject to and shall obey all Rules and Regulations, orders, instructions or requirements, whether mentioned in regard to a specific assignment or rank, or in the General Rules and Regulations, or emanating from competent authority from time to time, insofar as may be applicable."

<u>Rule 3.12</u> Which states: "Every member of the Department shall, without unnecessary delay, transmit to his/her superior officer any information of any unusual occurrence, important casualty, serious crime or unsafe public condition existing or occurring in his presence or which he is made aware of and shall take proper police action with regard thereto."

<u>Police Officer Peter Gelozin</u>

Officer Gelozin arrived at the scene and stated he was an observer to the incident which took place in an 8' x 11' room, yet once he observed Jackson pushed onto the desk he saw nothing else.  His statement appears to be less than credible, due to the size of the room, his vantage point, and the statements of the other participants.  It appears that Officer Gelozin violated the following Rules and Regulations:

<u>Rule 1.1</u>  Which states: "Members of the Department shall familiarize themselves with these Rules and Regulations and each member shall conform and abide by same."

<u>Rule 1.3</u>  Which states: "All members of the Department shall be subject to and shall obey all Rules and Regulations, orders, instructions or requirements, whether mentioned in regard to a specific assignment or rank, or in the General Rules and Regulations, or emanating from competent authority from time to time, insofar as may be applicable."

Rule 3.12 Which states: "Every member of the Department shall, without unnecessary delay, transmit to his/her superior officer any information of any unusual occurrence, important casualty, serious crime or unsafe public condition existing or occurring in his presence or which he is made aware of and shall take proper police action with regard thereto."

Rule 4.1  Which states: "Any member of the Department who conducts himself/herself in such a manner as to discredit the Department shall be guilty of conduct unbecoming an officer, even though such conduct is not specifically set forth in the rules."

Rule 5.3  Which states: "No member of the Department shall willfully depart from the truth, either in giving testimony, or in connection with any legal official order received by him/her, or in his/her official duties."

Police Officer John Kennedy

    Officer Kennedy's version of how the prisoners were treated is in direct conflict with other statements and physical evidence. Several participants reported that a handcuffed Mr. Joyce was punched in the face by Officer Procaccini.  This appears to be supported by photos documenting an injury to Joyce's left cheek area.  This injury was confirmed by several other witnesses.

    Officer Kennedy did not advise any superior officer of the incident.  Further, the official report filed by Officer Kennedy on the night of the incident and his statement given at the Office of Internal Affairs appear less than completely credible, in that they conflict with statements of several participants and the physical evidence.

    It appears that Officer Kennedy violated the following Rules and Regulations:

Rule 1.1  Which states: "Members of the Department shall familiarize themselves with these Rules and Regulations and each member shall conform and abide by same."

Rule 1.3  Which states: "All members of the Department shall be subject to and shall obey all Rules and Regulations, orders, instructions or requirements, whether mentioned in regard to a specific assignment or rank, or in the General Rules and Regulations, or emanating from competent authority from time to time, insofar as may be applicable."

Rule 3.12 Which states: "Every member of the Department shall, without unnecessary delay, transmit to his/her superior officer any information of any unusual occurrence, important casualty, serious crime or unsafe public condition existing or occurring in his presence or which he is made aware of and shall take proper police actions with regard thereto."

Rule 4.1  Which states: "Any member of the Department who conducts himself/herself in such a manner as to discredit the Department shall be guilty of conduct unbecoming an officer, even though such conduct is not specifically set forth in the rules."

Rule 5.3 (two counts) Which states: "No member of the Department shall willfully depart from the truth, either in giving testimony, or in connection with any legal official order received by him/her, or in his/her official duties."

## Police Officer Joseph Procaccini

Officer Procaccini arrived on the scene and found two parties in custody and handcuffed.  He involved himself in a verbal confrontation with one of those parties, Jackson, and from statements of other participants the verbal confrontation escalated into a physical confrontation.

Mr. Jackson ended up on the floor, and the confrontation continued.  At this point Mr. Joyce verbally protested the treatment of Jackson moving forward towards Officer Procaccini.  This verbal confrontation also resulted in a physical confrontation in which Joyce claimed he was punched and injured.  This statement appears to be supported by statements from some participants and the physical evidence.

No reports were submitted by Officer Procaccini in regards to his use of force on either party during this incident.

A continuation of the verbal confrontation took place as the prisoners were being led away, within earshot of citizens in the train station lobby.

The statement of Officer Procaccini appears to be less than completely credible, in that it conflicts with the statements of several participants and the physical evidence.

It appears that Officer Procaccini violated the following Rules and Regulations:

Rule 1.1  Which states: "Members of the Department shall familiarize themselves with these Rules and Regulations and each member shall conform and abide by same."

Rule 1.3  Which states: "All members of the Department shall be subject to and shall obey all Rules and Regulations, orders, instructions or requirements, whether mentioned in regard to a specific assignment or rank, or in the General Rules and Regulations, or emanating from competent authority from time to time, insofar as may be applicable."

Rule 1.5  Which states: "Members of the Department while on or off duty, shall respect and obey all laws, ordinances, rules and regulations, duty and procedural instructions."

Rule 3.8  Which states: "Members of the Department shall use only the force necessary when making an arrest.  They shall treat all persons fairly and humanely and shall not use physical force except when necessary to prevent escape, in self-defense, or to prevent violence to another person."

Rule 3.10  Which states: "Members of the Department shall complete and submit all required written reports prior to reporting off duty unless express permission to do otherwise is granted by their superior officer."

Rule 4.2  Which states: "Failure of a member, either willfully or through negligence, incompetence, or cowardice, to perform the duties of his/her rank or assignment, or violation by a member of any department rule, duty, instruction, or order, or conduct prejudicial to the good order and police discipline of the Department, or conduct unbecoming an officer and a lady or gentleman, which may not be specifically set forth in Department rules, may be considered sufficient cause for discharge, demotion, suspension, or other penalty."

Rule 5.3  (three counts) Which states: "No member of the Department shall willfully depart from the truth, either in giving testimony, or in connection with any legal official order received by him/her, or in his/her official duties."

Rule 5.4  Which states: "Courtesy and civility toward the public, shall be displayed at all times by all members and employees of the Department.  Intolerance in action or speech toward any person because of nationality, race or religion shall not be shown, displayed or expressed by any Department member at any time."

    It appears that Officer Procaccini violated Policy and Procedure number 1.6 "Law Enforcement Code of Ethics"