UNITED STATES DISTRICT COURT
DISTRICT COURT OF CONNECTICUT

| | |
|---|---|
| DAVID JOYCE,<br>　　　　　Petitioner | :<br>:<br>: |
| v. | : |
| | : |
| THERESA LANTZ, COMMISSIONER<br>OF CONNECTICUT DEPARTMENT OF<br>CORRECTION, AND HECTOR<br>RODRIGUEZ, WARDEN CHESHIRE<br>CORRECTIONAL INSTITUTION | :　Civil No.  3:03cv655 (PCD)<br>:<br>:<br>:<br>: |
| | : |
| 　　　　　Respondents. | : |

**RULING ON SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On March 3, 1993, following a jury trial, Petitioner was convicted of felony murder, attempted robbery in the first degree, robbery in the first degree and criminal possession of a pistol or revolver.  The jury acquitted Petitioner of the charges of attempted murder and assault in the third degree.  Petitioner was sentenced to a term of imprisonment of ninety (90) years.  Petitioner has exhausted all remedies available to him in the courts of the State of Connecticut as required by 28 U.S.C. § 2254(b)(1)(A) and asks the Court to vacate the Connecticut trial court's conviction and sentence and remand his case to the trial court for further proceedings.

Petitioner argues that his conviction should be vacated on the grounds that: (1) he was deprived of his constitutional right to confront witnesses and his fundamental right to present a defense and (2) he was deprived of effective assistance of counsel.  For the reasons set forth below, his habeas petition is **denied**.

**I.　　BACKGROUND**

The Connecticut Appellate Court provided the following synopsis of the facts underlying

Petitioner's conviction:

> On August 1, 1991, [Petitioner] entered a small grocery store in Bridgeport. As he approached the counter, he grabbed a female customer, held a knife to her throat and threatened to kill her if the clerk, John Hanna, did not give him money. Nicholas Hanna, the store's owner, was sitting on a crate behind John near the cash register as the defendant jumped over the counter to take money from the register. Nicholas grabbed a gun he kept nearby and shot [Petitioner] once in the head. During a struggle for the gun, [Petitioner] shot Nicholas in the forehead, killing him. [Petitioner] shot twice at John, missed him, and fled from the store. Outside the store, [Petitioner] pulled a woman, Joyce Castro, from her car and stole her purse and car.
>
> [Petitioner] was later apprehended in Hartford after the police were told about a shooting victim in an apartment on Cabot Street. The Hartford police located the stolen vehicle three blocks from the Cabot Street address and notified the Bridgeport police. Sergeant Glen Prentice of the Bridgeport police went to Hartford to investigate. On August 2, 1991, Prentice spoke to [Petitioner] at a Hospital in Hartford and arrested him on an outstanding warrant in an unrelated case. [Petitioner] was returned to Bridgeport on the evening of August 2, 1991, and he asked to speak to Prentice. [Petitioner] signed a written waiver of his Miranda rights and gave Prentice a written statement. Prentice again questioned [Petitioner] on August 3, 1991, and [Petitioner] gave him a second written statement. On August 4, 1991, Prentice sought to question [Petitioner] again, but he refused to speak to him.

State v. Joyce, 45 Conn. App. 390, 696 A.2d 993, 392-93 (1997).[1]

### A. Trial Court Proceedings

The issues relevant to the instant habeas petition arising from Petitioner's March 1993 criminal trial involve the trial judge's refusal to allow Petitioner to cross-examine the state's lead witness about his possible bias against Petitioner. The witness, Detective Sergeant Glen Prentice, arrested Petitioner in Hartford, brought him back to Bridgeport and obtained two statements from Petitioner during subsequent interrogations. Both statements were later offered into evidence by the state at Petitioner's criminal trial.

---

[1] The factual findings of state courts are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).

2

Petitioner's criminal trial counsel, Paul Tymniak, attempted to question Prentice in an offer of proof, made during trial but outside the presence of the jury, regarding Prentice's knowledge of a February 15, 1990 incident at the Bridgeport Train Station in which Petitioner was struck in the face while handcuffed by Bridgeport police officer Joseph Procaccini ("the Procaccini Incident"). See Criminal Trial Transcript at 580. As a result of his conduct, Procaccini was convicted in federal court and sent to prison. Prentice acknowledged that he had known Procaccini "as a brother police officer" and that they had mutual friends on the police force. Id. at 581, 601-02. Prentice also acknowledged that he was aware of the Procaccini Incident and that he eventually became aware that Petitioner was involved in that incident. Id.

The Procaccini Incident occurred seventeen and one-half months before the event at the convenience store ("the Wood Avenue Incident") that gave rise to Petitioner's felony-murder conviction. Petitioner alleges that as a consequence of the Procaccini Incident, the Bridgeport police, and specifically Sergeant Prentice, are biased against him. Petitioner wanted to use this information to impeach Prentice's testimony. The trial judge, however, ruled that the proposed cross-examination of Prentice regarding the Procaccini Incident was irrelevant and would not be permitted. Id. at 603-06.

The defense supplemented its offer of proof by calling Officer David Daniels to the stand. Id. at 703-04. Daniels was present when Petitioner was punched by Procaccini and he later reported the incident to his supervisors. Id. at 707, 709. Daniels testified that after reporting the incident, he was treated as the one responsible for Procaccini's discipline, ostracized and treated as a "non-person" by fellow members of his Fifth Platoon. Id. Daniels further testified that other officers, including Prentice, refused to talk to him, would close their office doors as he walked by

3

and even failed to provide him with back-up out on the street.. Id. at 709-10.

At the conclusion of the offer of proof, Petitioner's defense counsel explained that he also sought to use Daniel's testimony to impeach Prentice by showing that Prentice was aware of and had strong feelings about the Procaccini Incident as demonstrated by his conduct toward Daniels. Id. Again, the criminal trial judge ruled that the testimony was irrelevant and collateral. Id. at 728.

### B. Appellate Court Decision

On direct appeal, the Connecticut Appellate Court concluded that the trial court erred in refusing to allow Petitioner to present evidence of bias or interest on the part of Sergeant Prentice. State v. Joyce, 45 Conn. App. 390, 397-99 (1997). The court stated that "[e]vidence tending to show bias is never collateral or irrelevant. Prentice's possible bias against [Petitioner] was clearly relevant and was a matter for the jury to consider when it evaluated Prentice's credibility." Id. Likewise, the court held that Officer Daniels's testimony was also improperly excluded from evidence as it tended "to show that Prentice had strong feelings about the Procaccini incident and was likely to have known of [Petitioner's] involvement before he investigated the present case and took [Petitioner's] statements. . . . The trial court improperly restricted [Petitioner's] right to show Prentice's bias through direct examination of Daniels." Id. After concluding that the trial court erred, however, the Appellate Court determined that "the trial court's limitation of Prentice's impeachment for bias was harmless beyond a reasonable doubt and does not warrant a new trial." Id. At 399-400.

Petitioner then petitioned the Connecticut Supreme Court for certification to appeal the decision of the Connecticut Appellate Court by raising the same issues presented to the appellate

court. Certification was initially granted on the issue of whether Petitioner's Sixth Amendment right to confrontation had been violated by the trial court. The Supreme Court later determined, however, that certification had been improvidently granted and dismissed the appeal on May 18, 1999. State v. Joyce, 248 Conn. 669, 728 A.2d 1096 (1999).

### C. Petitioner's State Habeas Trial

During the pendency of his direct appeal, Petitioner also filed a state petition for a writ of habeas corpus alleging, *inter alia*, that his trial counsel had been ineffective. Petitioner's argument centered on the acts of another police officer, John Kennedy, who was present at the Procaccini Incident and involved with the Wood Avenue Incident. Petitioner argued that his trial counsel had been ineffective for failing to investigate, develop and offer certain evidence regarding Kennedy's involvement in the attempted cover-up of the Procaccini Incident. This evidence primarily consisted of findings by the Internal Affairs Division of the Bridgeport Police Department that Kennedy had lied to his superiors about what had happened.

In a sworn statement, Kennedy originally had denied that Procaccini had abused Petitioner in any way. See App. A, B, C, and D to Petr's Reply. Kennedy later admitted, however, including during his testimony at the habeas trial, that Procaccini had punched Petitioner while Petitioner was handcuffed. Kennedy also confirmed that he issued a police report as a result of that incident which contained no reference to Procaccini's assault on Petitioner. App. D to Petr's Reply; see also State Habeas Transcript 5/15/00 at 50-51. As a result of the Internal Affairs investigation, the committee concluded that Kennedy had violated multiple department Rules and Regulations. See App. A to Petr's Reply.

Petitioner also argued that his trial counsel was ineffective for failing to investigate,

5

develop and offer evidence at trial regarding Kennedy's direct and immediate involvement in the Wood Avenue Incident, including his interviews at the scene with the victim's brother and wife, John Hanna and Alice Hanna. Petitioner asserted that his trial counsel should have offered evidence about how they both identified Petitioner immediately after Kennedy had interviewed them and showed them photos of Petitioner. Kennedy further testified that, after responding to the scene, he assisted other officers in locating and identifying evidence. State Habeas Transcript 5/15/00 at 37. He also stated that he accompanied Sergeant Prentice to Hartford in order to apprehend Petitioner, but said that he only recognized Petitioner as the victim of the Procaccini Incident upon entering Petitioner's hospital room. Id. at 49. Kennedy testified that he left the hospital room and asked to not be involved in the investigation immediately after realizing that Petitioner was the suspect. See App. I to Respt's Mem. Opp. at 56. Petitioner argues that offering further evidence to the jury that Bridgeport police officers were biased against him could have been used to cast doubt on the validity of the confession statements he made to Prentice.

    The state habeas court denied Petitioner's claims and dismissed the petition on February 15, 2001. See App. I to Respt's Mem. Opp. at 46-65. Petitioner appealed the state habeas court's denial of his petition. On February 12, 2002, the Connecticut Appellate Court affirmed the judgment of the state habeas court. See Joyce v. Commissioner of Correction, 68 Conn. App. 903, 792 A.2d 912 (2002). Again, Petitioner petitioned for certification to appeal the decision of the Appellate Court. That petition was denied by the Connecticut Supreme Court on April 19, 2002. See Joyce v. Commissioner of Correction 260 Conn. 918, 797 A.2d 514 (2002). On April 10, 2003, Petitioner filed a petition for writ of habeas corpus with the Court.

**II.    PETITIONER'S RIGHT TO CONFRONT STATE WITNESSES AND TO**

**PRESENT A DEFENSE**

    **A.    Standard of Review**

Pursuant to 28 U.S.C. § 2254, a writ of habeas corpus may issue where a state court adjudication is (1) "contrary to. . . clearly established federal law" or (2) "involved an unreasonable application of. . . clearly established federal law." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2004). If a state-court decision is not "contrary to" established Supreme Court precedent, the federal habeas court must determine whether the state court's decision involved an "unreasonable application" of clearly established federal law. A federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. The Supreme Court has made clear that "an unreasonable application of federal law is different from an incorrect application of federal law," explaining that under § 2254(d)(1)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

    **B.    Discussion**

Petitioner argues that a writ of habeas corpus should be granted and a new trial ordered because he was "wrongly deprived of his fundamental constitutional right [under the Sixth and Fourteenth Amendments of the U.S. constitution] to confront the state's lead witness, [Sergeant Glen] Prentice, with evidence of bias arising from the conviction of a police officer in Prentice's unit for beating [Petitioner] in a previous incident." Petr's Reply at 11. Petitioner contends that his defense was based in large part on eliciting evidence of the motive, interest or bias that the

Bridgeport Police Department had against him as the result of the Procaccini Incident, which occurred approximately one and one-half years before Petitioner was arrested and charged with the crimes for which he is now convicted. On direct appeal, the Connecticut Appellate Court concluded that the trial court erred in refusing to allow Petitioner to present evidence of Prentice's bias. The court held that "[e]vidence tending to show bias is never collateral or irrelevant. Prentice's possible bias against the defendant was clearly relevant and was a matter for the jury to consider when it evaluated Prentice's credibility." Joyce, 45 Conn. App. at 398. The court then proceeded to scrutinize the trial court's mistake using the harmless error analysis referenced in State v. Colton:

> Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

227 Conn. 231, 253, 630 A.2d 577 (1993) (internal quotation marks and citation omitted). In analyzing the impact of the error under Colton, the Connecticut Appellate Court used factors that were approved by the United States Supreme Court in Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, (1986). The Connecticut Appellate Court concluded that because "Prentice's testimony was . . . cumulative and corroborative of the testimony of John Hanna," and "the state had a strong case against the defendant," "the trial court's limitation of Prentice's impeachment for bias was harmless beyond a reasonable doubt and does not warrant a new trial." Joyce, 45 Conn. App. at 399-400.

The Supreme Court, in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), held that "before a federal constitutional error can be held harmless, the court must

be able to declare a belief that it was harmless beyond a reasonable doubt." Under the Chapman harmless-error analysis, "[t]he correct inquiry is whether, assuming that the damaging potential of cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Van Arsdall 475 U.S. at 684. After reviewing the harmless-error analysis factors, the Court does not find the Connecticut Appellate Court's decision that the trial court's error was harmless beyond a reasonable doubt was unreasonable.

Regardless of the Court's opinion regarding the correctness of the Connecticut Appellate Court's finding, it was, at the very least, a reasonable application of the harmless-error factors. Most significantly, the Connecticut Appellate Court reasoned that "[o]verall, the state had a strong case against [Petitioner]." Joyce, 45 Conn. App. at 400. In fact, the record discloses that the evidence against Petitioner was overwhelming. The defense never contested the fact that Petitioner was in the store at the time of the shooting, only whether there was an attempted robbery. See App. F to Respt's Mem. Opp. at 1. Additionally, the car and purse stolen in the perpetration of the crime were both later found near Petitioner. See Joyce, 45 Conn. App. at 400. Petitioner was then apprehended in a Hartford hospital after the police were told about a shooting victim. Id. at 393. Moreover, Prentice's testimony was "cumulative and corroborative of the testimony of John Hanna," one of three eyewitnesses who placed Petitioner at the crime scene. Id. at 400. Finally, Petitioner has not shown that his statements, which implicated him in conduct consistent with his convictions, were invalid.

There is always an uncertainty when evidence is excluded as to how it would have affected the jury's decision. In any habeas case where harmless error was found with regard to excluded evidence, it is not the province of this Court to come to a different application of the

law.  See Williams, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.").  In a case such as this, where the state court reasonably applied the constitutionally correct standard, it cannot be said, and Petitioner has not shown, that such a decision is contrary to clearly established federal law or was an unreasonable application of clearly established federal law.  It was, at the very least, *reasonable* for the Connecticut appellate court to conclude that the trial court's error in not allowing the cross-examination of Sergeant Prentice or direct examination of Officer Daniels was harmless when Prentice's testimony is viewed in conjunction with the prosecution's case as a whole.  Accordingly, Petitioner's first claim is denied.

### III.  PETITIONER'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

#### A.  Procedural History

The habeas trial occurred over six days and the court heard testimony of several witnesses, including Daniels and Kennedy.  The court also took judicial notice of the fact that Attorney Paul M. Tymniak, Petitioner's trial counsel, died in July of 1999, and was therefore not able to testify with regard to his conduct in the criminal trial.

Petitioner argued at the state habeas proceeding that he was denied the effective assistance of counsel at his criminal trial.  This claim was rejected and Petitioner's state petition for a writ of habeas corpus was denied by the state court on February 15, 2001.  See App. I to Respt's Mem. Opp. at 46.  On appeal the Connecticut Appellate Court affirmed the state court's decision.  See App. H to Respt's Mem. Opp.  Thereafter, Petitioner filed a petition for

certification to appeal the Appellate Court decision to the Connecticut Supreme Court, but the petition was denied on April 19, 2002. See App. N to Respt's Mem. Opp.

Petitioner now asserts in this petition that his trial lawyer, Paul M. Tymniak, was ineffective because he failed:

> [T]o investigate, develop and/or offer evidence at trial regarding Detective Kennedy's involvement in the attempted cover-up of the 2/15/90 beating incident, and failed to investigate, develop and/or offer evidence at trial regarding Detective Kennedy's direct and immediate involvement in the investigation of 8/1/91 Wood Avenue incident, including (but not necessarily limited to) his interviews with the witnesses and victims who later testified at trial and implicated the petitioner.

Petitioner's Second Amended Petition for Writ of Habeas Corpus.

### B.     Standard of Review

To prevail on an ineffective assistance of counsel claim, Petitioner must demonstrate both that: (1) the performance of his counsel was deficient, in that he "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) the deficient performance prejudiced Petitioner such that there is a reasonable probability that, but for the deficient performance, the results of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong, Petitioner must establish that his counsel's performance, in light of all the circumstances, fell below an objective standard of reasonableness. Id. at 688. Judicial scrutiny of an attorney's performance at trial must be "highly deferential." Lanfranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 689). The Supreme Court has emphasized that "[a] fair assessment of attorney performance requires that every effort

be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Moreover, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second prong of the Strickland analysis requires Petitioner to prove, if his counsel's performance is shown to be flawed, that there is a reasonable probability that in the absence of such deficiency the results of the trial would have been different. Id. at 694. "A 'reasonable probability' in this context is one that 'undermines confidence in the outcome.'" Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 694). "Counsel's performance can be prejudicial 'even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.'" Lanfranco, 313 F.3d at 118 (quoting Strickland, 466 U.S. at 684). With regard to this prong, the Second Circuit requires "requires some objective evidence other than defendant's assertions to establish prejudice." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).

**C.    Discussion**

Petitioner argues that his trial counsel was ineffective for failing to investigate, develop and offer evidence regarding Officer (now Detective) John Kennedy's role in the cover-up of the Procaccini Incident and his subsequent involvement with the Wood Avenue Incident for which Petitioner is convicted. Petitioner claims that Kennedy's involvement with the Procaccini Incident should have been put before the jury as further evidence that the Bridgeport Police Department was biased toward Petitioner. As discussed previously, the State Appellate Court

held that the trial court's decision to prevent Petitioner from presenting evidence of possible officer bias constituted harmless error. See State v. Joyce, 45 Conn. App. at 397-400. Because the "purpose of the evidence at trial was to discredit Prentice, who had a much larger role in the investigation than did Kennedy," the state habeas court found that "[o]nce Attorney Tymniak was denied by the trial court as to the cross-examination of Prentice and the offer of proof for Daniels' direct testimony, it cannot be said that the trial court or Appellate Court would have viewed Kennedy's testimony any differently." See App. I to Respt's Mem. Opp. at 57. The state habeas court held that Attorney Tymniak's conduct, in light of his having properly offered the same evidence through Prentice and Daniels, did not fall below the acceptable level of professional assistance. See id. at 63-65.

Assistant State's Attorney John C. Smriga, the prosecuting attorney for the underlying criminal matter, testified during Petitioner's habeas trial that he first learned of the Procaccini Incident from Attorney Tymniak during pretrial discussions and that Attorney Tymniak was prepared to use this incident during trial. See App. I to Respt's Mem. Opp. at 55. Attorney Tymniak was unable to testify at the habeas trial, however, so he could not explain why he ultimately made the decision not to call Kennedy to testify about the Procaccini Incident. Still, Strickland sets forth a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Relying on that presumption, the state habeas court concluded:

> It is not the function of this court to "second-guess" the decisions of [P]etitioner's attorneys. Those decisions have been made, ruled upon by a judge and reviewed by the Appellate Court. Each decision of counsel was made in the heat of trial and with a variety of consequences. To view these decisions with the benefit of hindsight would not be appropriate nor is it the proper standard. Facing the significant weight of evidence

>against his client, Attorney Tymniak did an effective job of protecting the interests of his client. He evidently provided sufficient representation for the jury to acquit [Petitioner] on the charges of attempted murder and assault in the third degree. There has been no evidence presented that would allow this court to find that he failed to adequately represent the interest of his client, as defined by state and federal law. . . . The petition is, therefore, dismissed, and the habeas denied.

App. I to Respt's Mem. Opp. at 64-65. In light of the trial judge's decision to exclude the testimony of Prentice and Daniels, Petitioner's counsel may have made the strategic decision to not offer Kennedy's testimony. Such a strategic or tactical decision might well have been sound trial strategy. Moreover, Kennedy testified at the hearing on the motion to suppress Petitioner's confession, but did not testify at Petitioner's 1993 criminal trial. Accordingly, evidence of his alleged bias would not have been relevant to the proceedings before the jury.

     Even if Petitioner had established that counsel's performance was deficient or did not constitute sound trial strategy, Petitioner cannot succeed on a claim for ineffective assistance of counsel because Petitioner has not established the requisite level of prejudice. In other words, Petitioner has not demonstrated that there is reasonable probability that the outcome of the trial court's proceedings would have been different if Petitioner's counsel had tried to present evidence of Kennedy's possible bias. The record shows that Kennedy played a relatively small role in the police investigation and subsequent prosecution of Petitioner. The state habeas court found that Kennedy interviewed the victim's brother and showed him an array of photographs, but that the brother was unable to make a positive identification. Kennedy also interviewed the victim's wife, who picked out Petitioner's photograph, but was "uncertain of her identification." App. I to Respt's Mem. Opp. at 56. Moreover, as discussed previously, Kennedy testified at the

state habeas trial that he did not realize who Petitioner was until he entered the hospital room, after which he removed himself from the investigation. Id. Given the relative strength of the state's case against Petitioner, there is no reasonable possibility that, but for the alleged errors of Petitioner's counsel, the result of the trial would have been different. Further, there has been no showing that any testimony could have been elicited from Kennedy that would have been exonerative of Petitioner or would not have been comparable to the testimony of Prentice and/or Daniels, which the trial judge excluded. As the Connecticut Appellate court explained:

> In all, three eyewitnesses placed [Petitioner] at the crime scene. Both [the murder victim's] wife and brother testified that he was in the store, and John Hanna identified him as the killer. [Petitioner] lied to the Hartford police upon his apprehension after stealing a car and driving to Hartford. Castro's pocketbook was found near where [Petitioner] was apprehended in Hartford. A Hartford police officer also identified [Petitioner]. Overall, the state had a strong case against [Petitioner].

Joyce, 45 Conn App. at 400.

Accordingly, it is held Petitioner has failed to prove that his lawyer's performance was deficient or that he suffered prejudice such that, but for the allegedly deficient performance, there is a reasonable probability that the results of the underlying proceeding would have been different. Stickland, 466 U.S. at 687. The Court concludes that Petitioner received effective assistance of counsel at trial and, therefore, Petitioner's second claim is denied.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's writ of habeas corpus is **denied**. The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, May  16 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court